400 So.2d 342 (1981)
Navarre Scott TRAYLOR, Sr.
v.
SHELL OIL COMPANY, et al.
No. 11813.
Court of Appeal of Louisiana, Fourth Circuit.
June 3, 1981.
*343 George & George, Vincent J. DeSalvo, Baton Rouge, for plaintiff-appellant.
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, James L. Selman, II, New Orleans, for defendants-appellees.
Porteous, Toledano, Hainkel & Johnson, John J. Hainkel, Jr., New Orleans, for Delta Field Erection, Inc.
Stanley E. Loeb, New Orleans, for Henry Miller.
Before SAMUEL, GARRISON and BAILES, JJ.
SAMUEL, Judge.
Plaintiff, Navarre Scott Traylor, Sr., filed suit against Shell Oil Company, Delta Field Erection, Inc., Travelers Insurance Company (Shell's liability insurer), Jim Ramsey, Timmy Frilow, Norman James Hymel, and Hubert Miller, seeking damages for bodily injuries sustained as a result of an accident in which he was involved while working in the course and scope of his employment *344 with Payne & Keller, Inc. on the premises of the Shell Oil Company refinery in Norco, Louisiana. The individual defendants are alleged to be executive employees of Shell Oil, and plaintiff asserts they were guilty of various acts of negligence which caused or contributed to his accident.
Thereafter, a motion for summary judgment was filed on behalf of Shell Oil and Travelers in which they maintained that at the time of plaintiff's accident, Payne & Keller, Inc., plaintiff's employer, was performing certain maintenance and repair work at the Norco refinery, which work was a part of the trade, business and occupation of Shell Oil so that plaintiff's exclusive remedy against Shell Oil and Travelers was under the Louisiana Workmen's Compensation Act, and particularly the "statutory employer" provisions of R.S. 23:1061. At the same time exceptions of prescription of one year were filed on behalf of the individual defendants, Ramsey, Frilow, Hymel, and Miller, on the ground that none of them had been sued in any capacity in any proceeding in any court of competent jurisdiction within a year of plaintiff's accident on August 14, 1973.
The trial court rendered judgment maintaining the motion for summary judgment by Shell Oil as well as the exception of prescription by the individual defendants. Apparently through inadvertence, Travelers was not included in the summary judgment even though it was a mover along with its insured, Shell Oil.[1] Plaintiff has appealed.
In this suit plaintiff's argument regarding the summary judgment is based on three grounds. First, he contends Shell Oil by contract required his employer, Payne & Keller, Inc., to obtain workmen's compensation insurance, the effect of which was to relieve Shell Oil of any responsibility imposed under the Louisiana Workmen's Compensation Act as a "principal" in respect to any injury suffered by an employee of Payne & Keller, Inc. while working on the job covered by the contract.[2] Plaintiff argues that because Shell Oil no longer has any compensation exposure it should not be allowed to escape potential tort liability as a statutory employer of the employees of its contractor, Payne & Keller, Inc. Next, plaintiff argues he was an employee of Payne & Keller, Inc., an independent contractor which had supervision and control over him on the job in question, and he was not a "borrowed servant" of Shell Oil. Third, he argues that, pursuant to the contract between his employer and Shell Oil, the work he was performing was not part of the trade, business, or occupation of Shell Oil because (a) Shell Oil did not have sufficient employees of its own to perform the work being undertaken and (b) the work plaintiff was performing was incidental to Shell Oil's goal of making larger profits and not an integral part of its trade, business, or occupation. We reject (b) as being completely without merit. Obviously Shell Oil, like other similar corporations, was in the business of making as large a profit as it legitimately could.
*345 In support of plaintiff's first argument, he cites as authority two concurring opinions, one in Broussard v. Heebe's Bakery, Inc.[3] emanating from this court, and another in Broussard v. Heebe's Bakery, Inc.,[4] the same case as decided by the Supreme Court of Louisiana.
Plaintiff's contention that Shell Oil improperly insulated itself from tort liability by requiring plaintiff's employer to furnish workmen's compensation insurance has been rejected by prior Louisiana jurisprudence. It should be noted the purpose of imposing compensation liability upon a principal to the employees of his independent contractor is to prevent principals from allowing improperly capitalized subcontractors to perform their essential activities in order to exculpate themselves from compensation liability.[5] The compensation statute specifically prohibits a contract or other device which operates to relieve in whole or in part any employer, whether regular or statutory, from liability under the act.[6]
In this regard Shell Oil points out that plaintiff had the option to reject the benefits of the compensation act, and thus provide himself with the right to bring a tort action for any damages suffered in the course of his employment against his regular or statutory employer.[7] The record shows no such election.
In Brown v. Kaiser Aluminum and Chemical Corp.,[8] the court disposed of plaintiff's first argument as follows:
"We likewise find no merit to plaintiff's alternative contention that Kaiser should be deprived of its immunity from tort liability by virtue of its established status as a statutory employer because of its having required its independent contractor to pay for workmen's compensation insurance. Kaiser would be entitled to indemnity from its independent contractor for any compensation which it might be required to pay as statutory employer under LSA-R.S. 23:1061, and the fact that it required its independent contractor to insure such indemnification in no way supports a judicial deprivation of its immunity from tort liability as a statutory employer."[9]
In this connection, plaintiff's reliance on the Broussard cases is misplaced. This court did not clearly consider the issue now raised. However, the majority of the Supreme Court did so as follows:
"In this Court plaintiff contends, as he did below, that the appellate court erred (1) in finding the relationship between Heebe and Wolf was that of principal-contractor, instead of vendor-vendee, and that (2) in any case, it makes no difference whether a principal-contractor relationship actually existed as it was not the intent of the legislature in adopting R.S. 23:1061 `to prevent injured employees of a contractor from recovering in tort against a negligent principal.'
We consider these assignments of error in reverse order because, if the postulation of plaintiff, joined by amicus curiae,2 that the injured employee of the contractor has two causes of action against the principal (one for compensation and the other for tort) is sound, then the much debated question as to legal relationship (principal-contractor or vendor-vendee) is immaterial and moot. However, we reject this argument, for this Court has decided on more than one occasion that the remedy afforded by R.S. 23:1061 to the employee of the sub-contractor against the principal is exclusive and has the effect of conferring tort immunity on the principal. See, Thibodaux v. Sun Oil Co., 218 La. 453, 49 So.2d 852 (1950); *346 Benoit v. Hunt Tool Co., 219 La. 380, 53 So.2d 137 (1951); and Coal Operators Casualty Co. v. Fidelity & Casualty Co., 223 La. 794, 66 So.2d 852 (1953).
In Benoit v. Hunt Tool Co., supra, the Court said: `Under the Workmen's Compensation Act and the jurisprudence of this state, the exclusive remedy of the employees of the contractor against the principal, as these two terms are used in the act, is for workmen's compensation, and there is no remedy in tort against the principal, as the principal is not a third person under the provisions of Section 7 of the act. Sections 6, 7, and 34, Act 20 of 1914, as amended, LSA-R.S. 23:1061, 23:1101, 23:1032; Thibodaux et al. v. Sun Oil Co. et al., La.App., 40 So.2d 761, affirmed 218 La. 453, 49 So.2d 852. The effect of Section 6 is that the principal shall be considered the employer of the employees of the contractor, in contemplation of the statute, so that such employees shall have the right to demand compensation from the principal, and this is their exclusive remedy, and the principal cannot be held liable to the employees of the contractor in tort.'
In view of our settled jurisprudence, the contention of plaintiff is one which addresses itself more properly to the legislature. That body has met time and time again and is presumed to be aware of our rulings. Yet it has not seen fit to amend the statute to conform to the views and contentions advanced by the plaintiff and amicus curiae." (Broussard v. Heebe's Bakery, Inc., 268 So.2d 657, 658).
Considering the above jurisprudence, we conclude the compensation remedy afforded by R.S. 23:1061 of the Louisiana Compensation Statute to this employee of a contractor against the latter's principal is the employee's exclusive remedy, thus conferring tort immunity to the principal regardless of the fact that Shell Oil required plaintiff's employer, Shell's contractor, to obtain workmen's compensation insurance.
Plaintiff's second argument, that he was not the "borrowed employee" of Shell Oil is conceded in brief by Shell Oil, and no discussion is needed. Shell Oil and Travelers contend plaintiff is a "statutory employee" and not a "borrowed employee" of Shell Oil. Revised Statute 23:1061 does not require a principal to exercise any degree of control or supervision over the employees of his contractors.
Plaintiff's third argument is that the work done by him in the course of his employment for Payne & Keller, Inc. was not part of the trade, business, and occupation of Shell Oil. Plaintiff describes his work as "maintenance and repair work" and this appears to be exactly what Shell Oil contends he performed at the Norco refinery.
In support of their motion for summary judgment, Shell Oil and Travelers furnished the affidavit of Richard M. Bosse, superintendent of operations at the Norco refinery. This affidavit establishes that: The services of Payne & Keller, Inc. were obtained to provide a supplemental labor force to carry out certain maintenance and repair work at the Norco plant; the work performed by plaintiff at the time of his accident (the inspection of the inside of a fluid catalytic cracking unit) was part of the maintenance and repair work which Payne & Keller, Inc. contracted to perform; plaintiff's inspection work and the maintenance and repair of the cracking unit were ordinary and usual maintenance; maintenance of the facilities of an integrated petroleum refinery is necessary to its continuity of operations; Shell Oil has often assigned its own employees to perform maintenance work; Shell Oil frequently has contracted with third parties to carry out maintenance work; and in 1973, the year of plaintiff's accident, the expense incurred by Shell Oil for maintenance of its Norco refinery was divided between its own employees and outside contractors at an approximate 50% basis.
Plaintiff did not present any contravening evidence or documentation to dispute any of the facts contained in the Bosse affidavit. Plaintiff contends that the trade, business and occupation of a company is a matter of fact for determination by *347 the trial judge.[10] However, plaintiff does not attempt to establish an issue of fact by filing contravening documents. The Code of Civil Procedure clearly provides that a person against whom a motion for summary judgment is filed may not rely on his pleadings but must establish by affidavit or other evidence that a genuine issue of fact exists.[11] In the present case we must accept the affidavit furnished by Shell Oil and Travelers as true.
Numerous cases in Louisiana involving the petroleum and refining industry demonstrate that oil companies routinely contract for various types of work to be carried out by third party contractors, and these forms of work have been held to be part of the usual trade, business, and occupation of the oil producers and refiners. In Thibodaux v. Sun Oil Co.,[12] an employee of one independent contractor was killed and an employee of another independent contractor was injured when an oil derrick belonging to Sun Oil Company, the defendant, collapsed. At the time of the accident both men were performing work on the well under the supervision of the employee who was injured. The trial court dismissed the tort suit on exceptions of no right or cause of action filed by Sun Oil Company, exceptions based on R.S. 23:1061 and the exclusive remedy provisions of the compensation statute. The Supreme Court affirmed and stated:
"Here the Sun Oil Company is engaged in the business of exploring for and producing oil. The drilling of wells, the reworking, if necessary, and the `fishing out' of well tools and implements which become stuck in the course of drilling the well are all interrelated and component parts, though different phases, of oil production. In other words, both Thibodaux and Baker were performing services in connection with work which was part of the business, trade and occupation of Sun Oil Company, or so closely related thereto as to become an integral part thereof. Therefore, the allegations of fact in the instant case clearly bring the matter within the rule of law provided in Section 6, Par. 1 of the Workmen's Compensation statute as now written."
In Doucet v. W.H.C., Inc.,[13] an employee of a construction company performing repair work on an oil well owned by Tidewater Oil Company was injured while assisting in the repair of a salt water disposal pump at the well site. Tidewater did not have anyone employed in the area of the well who could perform this work, but it did have two permanent employees capable of such work on its payroll in a town some distance from the well. Because of this distance, it was not economically feasible to send them to the site, although they could have performed the work. Instead, plaintiff's employer was contracted to perform the work. The court ruled that the repair of a salt water disposal pump at the well site was part of the trade, business and occupation of Tidewater and dismissed plaintiff's damage suit.
In Kelly v. United States Fid. & Guar. Co.,[14] a maintenance contractor's employee sustained brain damage while performing maintenance or repair work at a chemical plant. While the court stated plaintiff was engaged in regular maintenance, it noted he was in fact performing highly specialized work which the chemical company employees did not have the capacity to perform. The court concluded that irrespective of how specialized the work was, it was nevertheless maintenance and thus part of the trade, business and occupation of a chemical plant.
Finally, we refer to Barnes v. Sun Oil Co.,[15] in which the defendant had contracted the plaintiff's employer to perform maintenance and repair work on glycol units, separators, reboilers, heaters, compressors, *348 pumps and valves, as well as gaslifts and flow lines at a Sun Oil production facility. Plaintiff was injured while repairing a gas flow line, and defendant did not perform this type of task at the facility with its own employees. The Supreme Court nevertheless concluded the work performed by plaintiff, in the course and scope of his employment with Sun's subcontractor, was part of Sun's regular trade, business and occupation. The Supreme Court rendered summary judgment in favor of the defendant as follows:
"After reviewing the entire record, however, we conclude that there is no essential dispute as to the fact that maintenance and repair services performed at Sweet Bay Lake by Weco were part of Sun's `trade, business or occupation.' It is true that Fincher's affidavit occasionally refers to the services as `specialty' work, whereas Sun's affidavits characterize it as `routine' maintenance and repair. But it is not disputed that the work consisted of repair and maintenance services performed regularly as an essential and integral part of Sun's business. The parties agree that Sun does not perform these tasks at Sweet Bay Lake with its own employees. However, this fact alone does not prevent the labor from being part of its regular business. The effect of La.R.S. 23:1061 is that the principal shall be considered the employer of the employees of the contractor engaged in work which is part of the regular business of the principal. Broussard v. Heebe's Bakery, Inc., 263 La. 561, 268 So.2d 656 (1972). Moreover, the opposing affidavit does not contest the fact that Sun and other oil companies regularly perform the same type work at other facilities as part of their businesses with their own employees.
Accordingly, it appears to be undisputed that the work performed by Weco at Sweet Bay Lake for Sun was part of Sun's `trade, business or occupation.' Under these circumstances, the mover was entitled to judgment as a matter of law, and the summary motion was correctly granted. Mashburn v. Collin, 355 So.2d 879 (La.1977); Cates v. Beauregard Electric Corporation, Inc., 328 So.2d 367 (La. 1976)."
The foregoing legal authorities show the trial court did not commit error by granting summary judgment in favor of Shell Oil. At the time of his accident plaintiff was performing his duties as a pipefitter inside a catalytic cracking unit at Shell Oil's refinery. He was performing maintenance and repair work inside the catalytic cracker when he fell approximately 45 feet. The jurisprudence establishes that even if Shell Oil did not maintain employees trained to perform the functions carried out by plaintiff and his employer, Payne & Keller, Inc., nevertheless maintenance and repair work in the form of repairing a catalytic cracker at an oil company's refinery is work within the trade, business, and occupation of the defendant. As there is no contradiction of Shell Oil's affidavit, we hold Shell Oil was entitled to a summary judgment.
Plaintiff did not brief the question presented by the maintaining of the exception of prescription filed by the individual defendants. Consequently, we assume he has abandoned that argument. Nevertheless, we point to the case of Favors v. Southern Industries, Inc.[16]
In the Favors case, a wrongful death suit was brought on February 13, 1976 against four corporate defendants, four nominally named executive officers, and four nominally named liability insurers of these officers. Those so nominally named were simply referred to as John Doe, etc. and XYZ Insurance Company, etc. The corporate defendants were dismissed on a peremptory exception on April 14, 1976 on the ground that plaintiff's sole remedy against them was for workmen's compensation. Thereafter, more than a year from the date of the accident, plaintiffs amended their suit to name Travelers Insurance Company as the insurer of the executive officers. On May *349 10, 1976 the correct names of the four executive officers were stated in a second amended petition. Travelers then filed an exception of prescription, which was maintained by the trial judge. The court of appeal affirmed. The court stated the amendments bringing in Travelers and the executive officers were filed after the one year prescriptive period had run, and concluded that prescription as to the unnamed defendants was not interrupted by the filing of the original suit, since they were not named as defendants nor was there a solidary obligation with any named defendant who was timely sued.
In the present case, the individual defendants were not sued in any proceeding within a year of the accident in suit. Plaintiff filed an earlier suit in federal court against Shell Oil Company alone. Two amendments also were filed, but only the original suit was filed within one year of the accident. None of the individual defendants in this suit were named in the federal proceeding. Shell Oil and Travelers were dismissed from the federal suit by summary judgment. Thus, the individual defendants were not sued within one year of plaintiff's accident, and the only action timely instituted by plaintiff were the one against Shell Oil, which was ultimately dismissed on the basis that it was immune to a tort suit. As Shell Oil and the individual were not solidarily liable, and as those individual defendants were not sued within one year of the accident, the trial court was correct in maintaining their exception of prescription and dismissing the suit as to them.
For the reasons assigned, the judgment appealed from is affirmed.
AFFIRMED.
NOTES
[1] In the same judgment an exception of prescription filed on behalf of Delta Field Erection, Inc. and Henry Miller, defendants, also was maintained. However, this portion of the judgment is not before us on appeal.
[2] This is the "statutory employer" defense provided by R.S. 23:1061 which reads as follows:

"Where any person (in this section referred to as principal) undertakes to execute any work, which is a part of his trade, business, or occupation or which he had contracted to perform, and contracts with any person (in this section referred to as contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; and where compensation is claimed from, or proceedings are taken against, the principal, then, in the application of this Chapter reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the employer by whom he is immediately employed.
Where the principal is liable to pay compensation under this Section, he shall be entitled to indemnity from any person who independently of this Section would have been liable to pay compensation to the employee or his dependent, and shall have a cause of action therefor."
[3] La.App., 254 So.2d 284.
[4] 263 La. 561, 268 So.2d 656.
[5] See Meche v. Farmers Drier & Storage Company, La.App., 193 So.2d 807.
[6] See LSA-R.S. 23:1033.
[7] LSA-R.S. 23:1039 and 23:1040.
[8] La.App., 289 So.2d 524.
[9] La.App., 289 So.2d 525, at p. 527; see also Ryland v. Insurance Company of North America, La.App., 255 So.2d 221.
[10] Lushute v. Diesi, La., 354 So.2d 179.
[11] LSA-C.C.P. Art. 967.
[12] 218 La. 453, 49 So.2d 852.
[13] La.App., 212 So.2d 267.
[14] La.App., 353 So.2d 349.
[15] La., 362 So.2d 761, 764, 765.
[16] La.App., 344 So.2d 693.