435 So.2d 1110 (1983)
STATE of Louisiana
v.
Claude Luke CRADDOCK.
No. 82 KA 1022.
Court of Appeal of Louisiana, First Circuit.
June 28, 1983.
Rehearing Denied August 23, 1983.
*1113 S. Austin McElroy, Office of Indigent Defender, Peter J. Garcia, Covington, for defendant.
William R. Alford, Asst. Dist. Atty., Covington, for the State.
Before LOTTINGER, COLE and CARTER, JJ.
CARTER, Judge:
This criminal appeal arises from the conviction of Claude Luke Craddock for first-degree murder, La.R.S. 14:30.[1] Defendant received the mandatory sentence of life imprisonment at hard labor without benefit of probation, parole or suspension of sentence for a period of forty (40) years. The defendant appeals his conviction and sentence, specifying eight assignments of error.

FACTS
On or about August 5, 1976, the defendant, Claude Luke Craddock, and Gene Michael Crapeau met with the victim, John C. Riley, and Dean Weisner at the Union 76 Truck Stop near Slidell, Louisiana in St. Tammany Parish to discuss a marijuana transaction. Riley and Weisner had in their possession about one hundred pounds of marijuana, which they were trying to sell to Craddock and Crapeau.
After discussing the transaction at the truck stop, Riley and Weisner (in an Oldsmobile which belonged to Riley's father) followed Craddock and Crapeau (who were in a pickup truck) to the Pearl River area. The truck stopped at a trailer, which belonged to Crapeau's stepfather. The four proceeded to a teepee structure under construction a short distance from the trailer. There the marijuana was examined and apparently found satisfactory by the prospective buyers, Craddock and Crapeau.
Crapeau then brought out some opium, which was smoked by the group in a small hash pipe. The combination of opium smoking and hot weather made the participants thirsty. Crapeau went into the trailer on the pretext of searching for liquid refreshments.
*1114 Shortly thereafter, Crapeau emerged from the trailer firing a weapon. The first shot missed, the second shot hit Weisner in the back knocking him to the ground, and the third shot hit Riley resulting in "a burst of blood" spurting from his mouth. Entering through the chest, the bullet passed through both lungs and injured a large vessel leading to the heart, resulting in severe hemorrhage. The pathologist testified that the bullet caused such internal bleeding that death resulted "somewhere between two and twenty minutes" after the initial penetration.
After being shot, Weisner laid very still and pretended to be dead. Weisner testified that Craddock stuffed rags into his mouth and Riley's mouth. Weisner then seized an opportunity to attempt to escape and quickly rose from the ground and dashed toward the Oldsmobile. Crapeau foiled the escape attempt and again attacked Weisner. In an effort to prevent Crapeau from shooting him a second time, Weisner tried to choke Crapeau. It was at that time someone from behind began brutally beating Weisner about the head and face with a heavy instrument. Again, Weisner played opossum pretending to be dead.
Craddock and Crapeau then picked up Weisner and placed him in the back seat of the Oldsmobile, covering his body with a sheet of plastic. Riley was placed in the trunk of the car. The Oldsmobile was driven to an isolated spot in the Honey Island Swamp, soaked with gasoline, and ignited.
Weisner testified that he heard the door of the pickup truck close and drive off. Weisner subsequently threw the plastic off, opened the door of the car, and staggered a few steps from the burning car. The car then exploded. The next thing Weisner remembers is waking up at Charity Hospital.
As a result of the shooting and beating, Weisner had an eye surgically removed, and plastic surgery was necessary to rebuild his nose. Weisner estimated that approximately 30 to 45 minutes expired from the time that he was shot until the time he crawled out of the automobile. Weisner further testified as follows:
"Q. And what you're asking me to believe is that these two kids take and shot you all for nothing?
A. They shot us for the marijuana.
Q. Oh. Shot you for the marijuana?
A. That or they are crazy. I don't know. I have no otherno other reason to believe they would do it for any other reason.
Q. Shot somebody down in cold blood for marijuana?
A. Yes.
Q. Without you being the aggressor?
A. Yes. Without me being the aggressor."
After the above series of events, both Craddock and Crapeau fled, with Crapeau to date remaining a fugitive. Defendant Craddock was apprehended on September 8, 1980, by the FBI outside of the Brazilian Consulate in New York City. He had attempted to change his appearance and was attempting to obtain a visa for travel to Brazil under the name of Perry Edward Stout.
Dr. Paul Domby Gard, Jr., Pathologist, testified that on August 5th and 6th, 1976, he performed an autopsy on a male who had been badly burned. Although badly burned, the internal cavity of the body was relatively intact and the fatal bullet was removed and recovered. He determined the cause of death as a gunshot wound which passed through the chest producing injury to both lungs and a large vessel to the heart and resulting in severe hemorrhage. He further testified that the body was burned severely with the arms and legs being merely stumps and the head had exploded from the heat.

TRIAL COURT
Claude Luke Craddock was indicted for first degree murder for the killing of John *1115 C. Riley.[2] Following the trial by jury, he was sentenced to life imprisonment without benefit of probation or suspension of sentence for a period of forty (40) years. This criminal appeal followed.

ASSIGNMENTS OF ERROR
Defendant-appellant, Claude Luke Craddock, relates the following assignments of error:
1. The trial court erred in refusing to grant defendant's timely motion to severe offenses and thereby allowed the submission of evidence of other crimes to the jury.
2. The trial court erred in refusing to grant defendant's motion to limit the introduction of inflammatory evidence since the prejudicial effect of such evidence far outweighed its probative value.
3. The trial court erred in its ruling that all of the evidence and photographs submitted by the state were admissible as part of the res gestae.
4. The trial court erred in allowing the admission of evidence and photographs of the offenses into evidence since the state failed to meet the notice requirements as set forth in State v. Prieur, 277 So.2d 126 (La.1973).
5. The court erred in refusing to grant defendant's motion to suppress and effectively denied him his constitutional right against unreasonable searches and seizure.
6. The court erred in refusing to grant defendant's motion for new trial based on the prosecutor's comments in his closing statements which were misleading, couched in untruth, unnecessarily derogatory, and inflammatory beyond all reasonable bounds and probative value.
7. Defendant was subjected to an unfair process of justice at his trial as his attorney was unprepared and unfamiliar with vital evidence and as such did not perform adequate cross-examinations nor present a proper defense.
8. The defendant was effectively deprived of his right to testify on his own behalf as his attorney specifically did not allow him to do so, and based upon such ineffective counsel, subjected the defendant to an unfair trial.

ASSIGNMENT OF ERROR NO. 1
Defendant Craddock was indicted both for the murder of John C. Riley and the attempted murder of Dean Weisner. Among the numerous pretrial motions filed by defendant was a motion to sever offenses.
Defendant contends that a joint trial for first degree murder of John C. Riley and attempted first degree murder of Dean Weisner would prejudice the rights of the defendant, in that the evidence introduced by the state to prove the charge of attempted first degree murder, would otherwise be excluded under the rules of evidence applicable to the charge of first degree murder. Additionally, defendant contends that a concurrent trial of the two charges would prejudice defendant's constitutional right to a fair trial.
On the hearing of the motion to sever, the state informed the court that it did not intend to go to trial at that time on the attempted murder charge. The state elected to proceed under the first degree murder statute only, and based on this representation, the trial judge denied the motion to sever. The case then proceeded to trial only on the first degree murder charge.
Article 495.1 of the Code of Criminal Procedure provides as follows:
"If it appears that a defendant or the state is prejudiced by a joinder of offenses in an indictment or bill of information or by such joinder for trial together, the court may order separate trials, grant a severance of offenses, or provide whatever other relief justice requires."
*1116 Article 495.1 of the Code of Criminal Procedure was amended in 1978 to adopt the interest of justice standard of the federal rules rather than the "appropriate to promote" test applied in State v. Carter, 352 So.2d 607 (La.1977).[3] The intention behind the change was that trial courts be given broader discretion in determining whether the tests of mutual admissibility and ability to compartmentalize had been met. See State v. Lewis, 358 So.2d 1285 (La.1978).
We first note that the problem of possible prejudice resulting from the joinder of offenses is not present here. The evidence of the crimes committed by defendant, as part of a continuous criminal transaction, would each be admissible at trial because it is part of the res gestae. La.R.S. 15:447, 448; State v. Kaufman, 331 So.2d 16 (La.1976), U.S. cert. denied 429 U.S. 981, 97 S.Ct. 495, 50 L.Ed.2d 591. Consequently, when evidence of the offense would otherwise be admissible as part of the res gestae, the possibility of prejudice would in no way be enlarged by the fact of joinder of offenses. State v. Carter, supra.
Hence, where the offenses joined are part of the same transaction, as here, the critical question which must be determined by the trial judge presented with a motion for severance of offense is whether, in view of the number of offenses charged and complexity of the evidence to be offered, the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense. La.C.Cr.P. art. 495.1; State v. Carter, 362 So.2d 510 (La.1978); State v. Carter, 412 So.2d 540 (La.1982).
However, in the instant case, the trial judge was never really presented with the issue of severance because the state voluntarily chose not to proceed against the defendant on both counts in the indictment. Instead, the state elected to pursue only the first degree murder charge.[4] In effect, the state alleviated the necessity for the trial court to rule on the issue of severance.
Therefore, since the issue of severance became moot, we find this assignment lacks merit.

ASSIGNMENT OF ERROR NO. 2
Defendant contends that the trial court erred in refusing to limit the introduction of inflammatory evidence, viz. certain photographs, particularly a photograph which depicted the remains of the victim in the trunk of the Oldsmobile automobile. Defendant contends that there was adequate testimony and other evidence to establish the identity of the victim, the manner in which the victim died, and the appearance of the victim after he had been burned and that the photographs were introduced merely to inflame the jury. As a result, defendant contends that the prejudicial effects of these photographs far outweighed their probative value.
The well established test concerning the admission of allegedly gruesome photographs is whether their probative value outweighs the possible prejudice that may result from their display to the jury. Photographs of the body of a deceased victim have generally been held relevant to prove corpus delicti; to corroborate other evidence concerning the manner in which death occurred; to establish the location, severity, and number of wounds; and to establish the identity of the victim. State v. Perry, 420 So.2d 139 (La.1982); State v. Tonubbee, 420 So.2d 126 (La.1982); U.S. appeal pending. Also, photographs which illustrate any fact, shed light upon any fact at issue in the case, or that are relevant to describe the person, place or thing depicted are generally admissible. State v. Boyer, 406 So.2d 143 (La.1981); State v. Lindsey, 404 So.2d 466 (La.1981).
After examining the photographs at issue, we find the photographs, including *1117 the photograph of the charred remains of Riley's body, to be extremely relevant and corroborative of the testimony of the witnesses. Additionally, the black and white photographs were not overly gruesome. Therefore, we find that the probative value of the evidence clearly outweighed any prejudicial effect and that these photographs were admissible.

ASSIGNMENTS OF ERROR NOS. 3 AND 4
The defendant contends in these assignments of error that the trial court erred in allowing the introduction of evidence, photographs and testimony, relating to the incidents of the crime which occurred after Riley was shot. Defendant bases this contention on the allegation that he is only being tried for the murder of Riley and that the photographs and other evidence introduced by the state with reference to the assault on and attempted murder of Weisner, the removal of Riley's body, and the burning of the automobile in the Honey Island Swamp constitute inadmissible "other crimes evidence". Defendant contends that this objectionable evidence was not part of the res gestae and that it was error for the trial court to allow their admission into evidence, without requiring the state to meet the notice requirements set forth in State v. Prieur, 277 So.2d 126 (La.1973).
As a general rule, the prosecution may not introduce evidence of other criminal acts of the accused unless the evidence is substantially relevant for some purpose other than to show that the accused is a bad man and thus more likely to have committed the crime. State v. Haarala, 398 So.2d 1093 (La.1981); State v. Monroe, 364 So.2d 570 (La.1978); State v. Sutfield, 354 So.2d 1334 (La.1978). This rule results from the belief that admission of this type character evidence creates a great risk of unjust convictions because the jury is likely to give the evidence excessive weight and convict the defendant merely because he is a bad man, because the defendant may well be unprepared to face such attacks, and because the jury is likely to be confused by proof of collateral issues. State v. Haarala, supra; State v. Prieur, supra. Comment, Other Crimes Evidence in Louisiana, 33 La. L.Rev. 614 (1973).
The general prohibition against the use of other crimes evidence does not bar admission of criminal acts which are an inseparable part of the whole deed. 1 Wigmore, Evidence § 218 (3d ed. 1940). In Louisiana, such acts are denominated as part of the res gestae and admitted under the authority of La.R.S. 15:447-48.[5] Res gestae is defined as "events speaking for themselves under the immediate pressure of the occurrence through the instructive, compulsive or spontaneous words or acts of the participants, and not the words of the participants when narrating the events. What forms any part of the res gestae is always admissible into evidence." La.R.S. 15:447, 448. In order to constitute res gestae, the circumstances and declarations must be necessary incidents of the criminal act, or immediate concomitants of it, or form, in conjunction with it, one continuous chain. La.R.S. 15:448; State v. Sharp, 414 So.2d 752 (La.1982). Also, evidence of other crimes which are part of the res gestae is always admissible without balancing its probative value against its prejudicial affect. State v. Stucke, 419 So.2d 939 (La. 1982).
A very close connexity between the charged offense and the other crimes evidence sought to be introduced under the res *1118 gestae exception is required. See State v. Schwartz, 354 So.2d 1332, 1334 (La.1978) and cases cited therein. This close connexity in time and location is essential to the exception because no notice of the state's intention to introduce evidence of offenses which are part of the res gestae is required. See La.C.Cr.P. art. 720; State v. Prieur, supra; Pugh, Louisiana Evidence Law 100-01 (Supp.1978) excerpting 35 La.L.Rev. 525, 526-27 (1975). Stated another way, the state is not required to give notice to the defendant of its intent to use evidence of other crimes when such evidence falls within the res gestae exception. State v. Belgard, 410 So.2d 720 (La.1982); State v. Sharp, supra; State v. Stucke, supra.
The Supreme Court has approved the admission of other crimes evidence when it is related and intertwined with the charged offense to such an extent that the state could not have accurately presented its case without reference to it. State v. Boyd, 359 So.2d 931, 942 (La.1978); State v. Clift, 339 So.2d 755, 760 (La.1976). In such cases, the purpose served by admission of other crimes evidence is not to depict the defendant as a bad man, but rather to complete the story of the crime on trial by proving its immediate context of happenings near in time and place. McCormick, Law of Evidence 448 (2d ed. 1972). The concomitant other crimes do not affect the accused's character, because they were done, if at all, as parts of a whole; therefore, the trier of fact will attribute all of the criminal conduct to the defendant or none of it. And, because of the close connection in time and location, the defendant is unlikely to be unfairly surprised. 1 Wigmore, Evidence § 218 (3d ed. 1940).
In State v. Sharp, supra, the Louisiana Supreme Court stated at page 754:
"In Louisiana, the res gestae doctrine is broad and includes not only spontaneous utterances and declarations made before or after the commission of a crime, but also testimony of witnesses and police officers pertaining to what they heard or observed before, during or after the commission of the crime, provided the requirements for the introduction of such evidence have been met. R.S. 15:447, State v. Kimble, 407 So.2d 693 (La.1981); State v. Molinario, 383 So.2d 345 (La. 1980), cert. den. 449 U.S. 882, 101 S.Ct. 232, 66 L.Ed.2d 106; appeal after remand 400 So.2d 345 (La.,1981). In order to qualify as part of the res gestae, the circumstances and declarations must be necessary incidents of the criminal act or immediate concomitants of it, or form in conjunction with it one continuous transaction. R.S. 15:448. Therefore, a very close connexity is required between the charged offense and the evidence of other crimes. State v. Haarala, 398 So.2d 1093 (La.,1981). State v. Lawson, 393 So.2d 1260 (La.,1981). This close connexity in time and location is essential to the exception because no notice is required by the state of its intention to introduce evidence which forms part of the res gestae. R.S. 15:477; C.Cr.P. 768, State v. Haarala, supra. State v. Brown, 352 So.2d 690 (La.,1977)."
In the present case, it is abundantly clear that the evidence was properly admitted. State v. Harper, 430 So.2d 627 (La.1983). Said evidence pertained to events which occurred either immediately before or immediately after Riley's death so as to constitute a continuous transaction. The murder of Riley, the assault on and attempted murder of Weisner, the disposal of the bodies, the burning of the automobile, etc. occurred within a span of 30 to 45 minutes, during which time there was no break in the series of events. Clearly, the "other crimes evidence" either formed part of the res gestae or established events comprising the res gestae; therefore, no Prieur notice was required and the evidence was properly admitted.[6]
*1119 For the above reasons, assignments of error 3 and 4 are without merit.

ASSIGNMENT OF ERROR NO. 5
In this assignment of error, defendant contends that the trial court erred in denying his pretrial motion to suppress certain evidence. Defendant alleges that while confined in the St. Tammany Parish jail, his cell was searched and numerous personal papers and attorney-client documents, containing confidential information pertaining to his case, were seized. Although defendant does not allege that any of this evidence was used at trial or that the information contained in the seized documents led to the discovery of evidence used at trial, defendant contends that his constitutional rights were violated.[7]
The trial court conducted an extensive hearing on the motion to suppress, and, based upon unequivocal assurances of the prosecutor that the district attorney's office had not seen the material in question, did not intend to use anything which had been seized, and further would not look at any of the material, the motion was denied. The trial court then ordered that the papers be returned to the defendant.
LSA-C.Cr.P. art. 703(A) provides:
"A defendant adversely affected may move to suppress any evidence from use at the trial on the merits on the ground that it was unconstitutionally obtained." (Emphasis added)
Since there has been no showing that any information obtained from the seized papers was used at trial or that any of the documents were used, directly or indirectly, the propriety of the denial of the motion to suppress is moot. State v. Smith, 339 So.2d 829 (La.1976), U.S. cert. denied, 430 U.S. 986, 97 S.Ct. 1685, 52 L.Ed. 381 (1977).

ASSIGNMENT OF ERROR NO. 6
Defendant contends that the trial court erred in denying the motion for new trial. Defendant grounds his contention that a new trial should have been granted on numerous alleged errors and improprieties committed by the prosecutor in closing statement and on rebuttal. He contends that the prosecuting attorney's summation to the jury was so unfair, improper, and prejudicial that defendant's conviction should be set aside in the interest of justice. Although defendant acknowledges that each of the prosecutor's alleged improper statements during argument, individually, would not compel a reversal of defendant's conviction, he contends that, taken collectively, they constitute a wholesale attack on the integrity of defense counsel, a pattern of misrepresentation of evidence, and a blatant emotional appeal to the jury for a conviction.
*1120 Defendant's motion for new trial was based on several grounds ennumerated in LSA-C.Cr.P. art. 851,[8] but his appeal addresses only the allegation that the ends of justice would be served by the granting of a new trial due to the misleading, untruthful, and inflammatory remarks made by the prosecutor during his closing argument.
Although this is a ground upon which the trial judge may grant a new trial, it presents nothing for the appellate court's review. State v. Toomer, 395 So.2d 1320 (La.1981); State v. Matthews, 354 So.2d 552 (La.1978).
The scope of argument by counsel is governed by LSA-C.Cr.P. art. 774, which provides:
"The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state of defendant may draw therefrom, and to the law applicable to the case.
"The argument shall not appeal to prejudice.
"The state's rebuttal shall be confined to answering the argument of the defendant."
LSA-C.Cr.P. art. 774, however, provides no sanctions against one who exceeds the permissible scope of argument. Comment (c) to the article indicates that if argument goes beyond the scope of article 774, it falls under the ambit of articles 770 and 771.[9] Upon request of the defendant, the court may, in its discretion, grant a mistrial or an admonishment, premised upon argument by *1121 opposing party which is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant in the mind of the jury. LSA-C.Cr.P. arts. 770 and 771; State v. Prestridge, 399 So.2d 564 (La.1981). The trial judge, however, has wide discretion in controlling the scope of argument. State v. Prestridge, supra.
In order for argument outside the scope of LSA-C.Cr.P. art. 774 to be reversible, the court must be thoroughly convinced that the jury was influenced by the complained of remarks and that they contributed to the verdict. State v. Dupre 408 So.2d 1229 (La.1982); State v. Sharp, 418 So.2d 1344 (La.1982).
Counsel for defendant, in his brief, set forth numerous instances of alleged impropriety on the part of the prosecutor. At trial of the case, however, counsel made few objections during the course of closing argument and rebuttal. The issue as to propriety of closing argument remarks is not preserved for review where defense counsel makes no objection to the statement either during argument or after the argument. State v. Whitmore, 353 So.2d 1286 (La. 1977). Stated another way, objections to remarks of a prosecuting attorney must be timely made in order to preserve the error on appeal. State v. Batiste, 318 So.2d 27 (La.1975).[10] Therefore, we will address only the few instances of alleged impropriety which were timely objected to and preserved on appeal.
The first objection addresses defendant's contention that it was improper for the prosecutor to state that the defense lawyer has to argue that the state's primary witness, Dean Weisner, lied, or he would convict his client. The portion of the objectionable argument reads as follows, at pp. 563-564 of the trial transcript:
"Mr. Alford:
All of the other evidence in the case tends to collaborate Dean Weisner, because naturally, Mr. Howard is going to get up here and he is going to tell you that Dean Weisner lied. I mean, it wouldn't matter if it was Dean Weisner; it wouldn't matter if it was this case. The defense lawyer has got to say that Dean Weisner lies. He can't get up here and tell you that Dean Weisner told the truth because then that convicts his client, you see. So, it doesn't matter if it's Dean Weisner or who it is. The defense lawyer has got to tell you he lied. Well, then, the question, the legitimate question in your mind should be, `Well, where is the proof that Dean Weisner lied; is there proof that Dean Weisner lied or is there proof that Dean Weisner told the truth?'"
Defendant contends that, by those statements, the prosecutor was implying that the defendant should have testified and that some stigma should attach to defendant for failing to testify. Defendant contends that the prosecutor was attempting, by the "backdoor" approach, to comment on the defendant's failure to take the stand, an implication clearly prohibited by LSA-C. Cr.P. art. 770(3).
In recounting the details of the crime perpetrated against John Riley and himself, Dean Weisner testified that "from behind, somebody started beating me in the head with a heavy instrument of some type." (Tr. trans. p. 371). When asked if he believed Luke Craddock was the person who was hitting him in the head, Weisner stated "there wasn't anybody else there that could strike a blow like that." (Tr. trans. p. 405). The prosecutor then asked, "So he was the only other person available?" to which Weisner responded, "to my knowledge, yes." (Tr. trans. p. 405). From the evidence before the jury, the only persons present at the time the crime was committed were Riley (now deceased), Weisner (the state's primary witness), Crapeau (a fugitive *1122 from justice), and Craddock (the defendant).[11]
References made in closing argument that the state's case stands uncontroverted have been frequently upheld by the Louisiana Supreme Court. See State v. Sims, 346 So.2d 664 (La.1977); State v. Reed, 284 So.2d 574 (La.1973). A statement that the state's theory of the case remains unassailed encompasses the entire case presented by the defense and does not focus on the defendant's failure to take the stand. However, when the defendant is the only person who can dispute the testimony, a reference to the testimony as uncontroverted focuses the jury's attention on the defendant's failure to take the stand. See State v. Latin, 412 So.2d 1357 (La.1982); State v. Perkins, 374 So.2d 1234 (La.1979).
Therefore, it appears from the evidence before the jury, that the prosecutor's comment as to the proof that Weisner lied could only refer to the defendant's failure to testify.
Counsel for defendant also objected when the prosecutor stated that defense counsel was hoping that a unanimous decision would not be reached, in that he hoped one of the jurors would forget the overall view or would not apply common sense to all of the actions. Upon hearing of the merits of the objections, however, defense counsel withdrew his objection to these statements. Therefore, this portion of the alleged improprieties is not before us on appeal.
Similarly, the withdrawn objection during the prosecutor's rebuttal, with reference to defense counsel's opening statements concerning the defendant taking the stand,[12] is not before us on appeal.
The final objection made by defense counsel was in reference to the following rebuttal argument:
"Mr. Alford:
So, I don't know howwhat mental gymnastics he expects you to go through to be able to say, `Well, that wasn't dangerous. That wasn't dangerous ammunition. That just proves reasonable doubt. That proves that there wasn't any planning and all that because they would have gone and bought another box of bullets if they had planned it and all.' I think it's a deadly item. And I think that is just an effort to confuse you. We know they work and they work well. So, if you want to let Luke Craddock go because they didn't choose the type of *1123 ammunition that Mr. Howard would have liked them to choose, then fine. But you're going to have trouble living with yourself afterward."
Counsel for defendant contends that these statements, coupled with the unobjected to hearsay statements elicited from the police officer, were calculated to inflame and prejudice the jury.
A prosecutor's predictions as to the consequences of a not guilty verdict, or the societal costs of such a result are clearly improper and should be avoided. LSA-C.Cr.P. art. 774; State v. Barrow, 410 So.2d 1070 (La. 1982) U.S. cert. denied. Notwithstanding this improper argument, as previously discussed above, the state's overwhelming evidence of defendant's guilt made it unlikely that these comments influenced the jury or contributed to its verdict. LSA-C.Cr.P. art. 774; State v. Sharp, supra.
Additionally, however, reversal of a conviction would not be the proper remedy in this case, despite the fact that the prosecutor improperly referred to defendant's failure to take the stand, because defense counsel did not make a motion for mistrial. In fact, counsel specifically stated that he was not moving for a mistrial or requesting an admonition.[13] Absence of a timely motion for mistrial constitutes a waiver of the alleged error. State v. Cushenberry, 407 So.2d 700 (La.1981).
We have carefully examined areas in closing argument and rebuttal objected to by the defendant, and we are thoroughly convinced that none of the remarks influenced the jury or contributed to the verdict.
We note improper remarks by both prosecutor and counsel for defendant dealing in personalities, as well as the improper statement by the prosecutor as concerns the statement that "if they let the defendant go free they would be confused and they were going to have trouble living with (themselves) afterward."
Comments by the prosecutor about counsel for defendant and comments by counsel for defendant about the prosecutor have no place in a criminal proceeding and the statement quoted above was clearly improper. Nevertheless, as we previously stated, convictions are not to be reversed because of improper closing arguments unless we are thoroughly convinced that the remarks influenced the jury or contributed to the verdict. If such remarks had taken place (and the comments with reference to the defendant's failure to take the stand may have been), the appropriate procedure for defense counsel would have been to immediately move for a mistrial or request an admonishment from the trial judge. Neither remedy was requested herein despite defendant being expressly advised thereof.
The Supreme Court in State v. Kersey, 406 So.2d 555, 560 (La.1981) stated that:
"To hold otherwise would allow the defendant, after a trial error has been made, to sit back silently and not call the court's attention to the error at the time when it could be remedied, insuring his right to a reversal on appeal if convicted, but proceeding with the trial in hopes of an acquittal. Such procedural tactics are not permitted. It is for this reason that procedural rules have been devised requiring the offended party to call any error to the judge's attention at a time when it can be remedied. Then, upon an erroneous ruling by the trial judge, the party has preserved his right to seek relief on appeal."
*1124 In any event, we are not convinced, in view of the overwhelming evidence against the accused, that the remarks influenced the jury or contributed to the verdict. The remarks must be considered in the context of the trial court's subsequent instruction to the jury, and are not therefore reversible error.

ASSIGNMENTS OF ERROR NOS. 7 AND 8
In these assignments of error, the defendant contends that he was subjected to an unfair process of justice at trial since his attorney was unprepared and unfamiliar with vital evidence, did not perform adequate cross-examining, nor present a proper defense, and the defendant was deprived of his right to testify in his own behalf since his attorney refused to let him do so.
It is hornbook law that a claim of ineffective assistance of counsel is more properly raised by an application for writ of habeas corpus in the district court, where a full evidentiary hearing may be conducted. State, ex rel. Bailey v. City of West Monroe, 418 So.2d 570 (La.1982); State v. Prestridge, supra; State v. Fontenot, 368 So.2d 121 (La.1979). See also, State v. Collins, 350 So.2d 590 (La.1977); State v. Daniels, 346 So.2d 672 (La.1977); State v. Ross, 343 So.2d 722 (La.1977).
This assignment of error is not properly before the court at this time.
Accordingly, defendant's conviction and sentence is affirmed.
AFFIRMED.
NOTES
[1] In Roberts v. State of Louisiana, 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (Supreme Court 1976), the United States Supreme Court held that the penalty portion of La.R.S. 14:30 was unconstitutional as to the mandatory death penalty. Therefore, the appropriate sentence to be imposed under a valid conviction for first degree murder at the time of the instant offense is the most severe constitutional penalty established by the legislature for criminal homicide at the time the offense was committed. State v. Roberts, 340 So.2d 263 (La.1976).
[2] Ibid.
[3] 1978 La.Acts. No. 466, amending La.Code Crim.P. art. 495.1. The language of La.Code Crim.P. art. 495.1 is now almost identical to the first sentence of Fed.R.Crim.P. 14.
[4] The state, however, reserved its right to proceed with the attempted first degree murder charge at a later date.
[5] LSA-R.S. 15:447 provides:

"Res gestae are events speaking for themselves under the immediate pressure of the occurrence, through the instructive, impulsive and spontaneous words and acts of the participants, and not the words of the participants when narrating the events. What forms any part of the res gestae is always admissible in evidence."
LSA-R.S. 15:448 provides as follows:
"To constitute res gestae the circumstances and declarations must be necessary incidents of the criminal act, or immediate concomitants of it, or form in conjunction with it one continuous transaction."
[6] Defendant Craddock was tried pursuant to the provisions of the first degree murder statute effective August 5, 1975. At that time La.R.S. 14:30 provided; in pertinent part:

"First degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm and is engaged in the perpetration or attempted perpetration of aggravated kidnapping, aggravated rape, aggravated burglary, or armed robbery; or
* * * * * *
(4) When the offender has a specific intent to kill or to inflict great bodily harm upon more than one person;
Evidence of any offense enumerated in subsection (1) or evidence which established specific intent to kill more than one person need not be part of the res gestae to be admissible on trial for first degree murder. These acts constitute essential elements of the offense. Therefore, evidence of the attempts on Weisner's life, viz. the shooting of Weisner, the beating of Weisner, and the burning of the automobile in which Weisner's body had been placed, is admissible into evidence as an element of the offense for which Craddock is being tried, in addition to comprising the res gestae.
[7] Defendant specifically alleges that the following constitutional rights were violated:

(1) Fourteenth Amendment due process.
Defendant contends that he was deprived of a fair and proper trial in that he had prepared writs, motions, and memorandums, which had been seized, and that he could not replace the legal documents because he was denied access to law library facilities, had insufficient time to prepare, and was financially unable to pay his attorney.
(2) Fourth Amendment protection against unreasonable searches and seizures.
(3) Sixth Amendment right of assistance of counsel.
Defendant contends he was denied assistance of counsel because some of the confiscated papers were communications between himself and his attorney.
[8] LSA-C.Cr.P. art. 851 provides:

"The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegation it is grounded.
The court, on motion of the defendant, shall grant a new trial whenever:
(1) The verdict is contrary to the law and the evidence;
(2) The court's ruling on a written motion, or an objection made during the proceedings, shows prejudicial error;
(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty;
(4) The defendant has discovered, since the verdict or judgment of guilty, a prejudicial error or defect in the proceedings that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before the verdict or judgment; or
(5) The court is of the opinion that the ends of justice would be served by the granting of a new trial, although the defendant may not be entitled to a new trial as a matter of strict legal right."
[9] LSA-C.Cr.P. art. 770 provides:

"Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
(1) Race, religion, color or national origin, if the remark or comment is not material and relevant and might create prejudice against the defendant in the mind of the jury;
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
(3) The failure of the defendant to testify in his own defense; or
(4) The refusal of the judge to direct a verdict.
An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial."
LSA-C.Cr.P. art. 771 provides:
"In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
(1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial."
[10] In the present case, the trial judge utilized a procedure, whereby defense counsel was permitted to make objections throughout the prosecutor's closing statement and rebuttal, but argument on the merits of each objection, outside the presence of the jury, was deferred until after closing statements were completed.
[11] A review of the record discloses that Joli Crapeau Moody gave a statement to police officers with reference to her knowledge of the facts of this case. The following is an excerpt from the police report made as a result of the interview with Ms. Moody:

"On 8-24-77 we interviewed Joli about her knowledge of the facts of the case with her attorney, mother and father present. She advised that the only thing she could tell us was what she saw with her own eyes. She advised that she was in the trailer with her child when she heard a comotion out front of the trailer. She looked out front and saw a car coming across the ditch with Mike hanging on the side and Deano driving and holding Mike by the throat. She then returned into the trailer and got her father's 22 caliber rifle and came outside where her brother was laying on the ground beside the car. She held the gun on Dean as he was trying to get into the trunk of the car. About that time Luke came running from the woods and Mike got up off of the ground and hit her taking the gun away and sending her into the trailer to stay. Mike later came to the trailer and took her to the washiteria (sic) and dropped her off to wash their clothes. He later returned and picked her up. Then they went to Houston via New Orleans where they picked up Luke. They then traveled to Houston then Brownsville and then to Mexico."
Additionally, in a line-up conducted on August 31, 1977, Weisner identified Joli Crapeau Moody as one of the perpetrators of the crime.
[12] Counsel for defendant objected to the following portion of the prosecutor's rebuttal argument:

"Mr. Alford:
Now, where is the ambush? Is Mr. Howard trying to trick you? He tells you it's trial by ambush in Louisiana. That he didn't know what the evidence was going to show. Listen, my getting up and making an opening statement isn't just a whim. I'm not standing up here bucking my gums. I am telling him, in open Court, what I intend to prove and how I intend to prove it. By law, I am telling him that. I have to tell him that. Now, where is the ambush? But he stands up and he tells you, `Well, I didn't know.' Now, if you recall, he made his opening statement after I made mine."
[13] The pertinent portion of the transcript appears at page 575, and reads as follows:

"The Court:
Let the record reflect the Court is now back in session. The defendant is in Court, attended by counsel. The State is represented. The Court is here to understand the objections of defense counsel made earlier. Mr. Howard, are you moving for a mistrial, sir?
Mr. Howard:
No, I am not at this time, Your Honor, nor do I move that Your Honor admonish the jury. I wouldI just wanted to note the objections for the record, Your Honor.
The Court:
All right, sir. Then there is nothingno ruling needed from the Court at this time?
Mr. Howard:
That is correct, Your Honor."