447 So.2d 580 (1984)
STATE of Louisiana, Plaintiff-Appellee,
v.
Ronald JAMES a/k/a James Gregg, Defendant-Appellant.
No. CR83-390.
Court of Appeal of Louisiana, Third Circuit.
March 7, 1984.
*582 L. Paul Gianfala, Lafayette, for defendant-appellant.
Glenn B. Foreman and Robert T. Cline, Asst. Dist. Attys., Crowley, for plaintiff-appellee.
Before DOMENGEAUX, GUIDRY and STOKER, JJ.
GUIDRY, Judge.
On April 15, 1983, the defendant, Ronald James, also known as James Gregg, was convicted of armed robbery, a violation of LSA-R.S. 14:64. On August 6, 1982, defendant was sentenced to serve seventy-five years at hard labor without benefit of probation, parole, or suspension of sentence. He now appeals his conviction and sentence on the basis of five assignments of error.

FACTS
On November 9, 1981, the defendant was canvassing West Hutchinson Street, Crowley, Louisiana, attempting to sell magazine subscriptions. For this purpose, he and a fellow worker entered the home of Ella Monroe, at approximately 8:00 p.m. The two remained inside the house close to a half-hour, during which time Ms. Monroe purchased a subscription to T.V. Guide magazine. The defendant later returned to the Monroe home, ostensibly to record an address on her copy of the receipt. After the victim was unable to locate her receipt, the defendant left momentarily. He then re-entered the home, grabbed Ms. Monroe and held a knife to her throat, threatening to cut her throat. The victim testified that defendant took seventy-five dollars from her at that time.
On appeal, the defendant asserts that the trial court erred in:
(1) allowing Captain Gilford Richard to remain in court after the rule of sequestration was invoked by defense counsel;
(2) allowing the state to read the oral inculpatory statement made by defendant to the jury;
*583 (3) allowing Captain Gilford Richard to testify in the capacity of a fingerprint expert;
(4) considering past criminal charges and accusations of other crimes set out in the pre-sentence report when the sentence was rendered; and,
(5) imposing an excessive sentence in violation of Article 1, Sec. 20 of the Louisiana Constitution.

ASSIGNMENT OF ERROR NO. 1
By this assignment of error, the defendant alleges that the trial court erred when it allowed Captain Gilford Richard to remain in court after the rule of sequestration was invoked by defense counsel.
LSA-C.Cr.P. Art. 764 provides the rule for sequestration of witnesses:
"Upon its own motion the court may, and upon request of the state or the defendant the court shall, order that the witnesses be excluded from the courtroom or from where they can see or hear the proceedings and refrain from discussing the facts of the case or the testimony of any witness with anyone other than the district attorney or defense counsel. The court may modify its order in the interest of justice."
An order of sequestration is intended to assure that a witness will testify concerning his own knowledge of the case without being influenced by the testimony of prior witnesses and to strengthen the role of cross-examination in developing facts. State v. Kimble, 407 So.2d 693 (La.1981).
Essentially, the defendant argues that Captain Richard was arbitrarily excluded from the rule of sequestration, thus allowing him to remain in the courtroom to hear the testimony of other witnesses, and to be recalled as needed by the defense. Therefore, the defendant argues, this placed the defendant at a great disadvantage and the trial judge's action in allowing Captain Richard to remain in the courtroom was an abuse of his discretion. We find no merit to this contention.
Before the voir dire examination of the prospective jurors the trial judge, of his own volition, inquired as to whether there were any witnesses in the courtroom. After a bench conference, the judge requested that the witnesses wait in the jury deliberation room during the voir dire examination. At that time, the assistant district attorney instructed Captain Richard to stay. The defense attorney did not offer any objection or protestation to Captain Richard's remaining in the courtroom during voir dire. Therefore, under LSA-C. Cr.P. Art. 841, the defendant has waived his right to assert as error the failure of the trial court to exclude Captain Richard from the courtroom during such procedure.[1]
After the trial commenced, neither the defense nor the state made a formal motion to sequester the witnesses. Captain Richard was the first witness to testify. Subsequently, two other witnesses, Stephanie Berrian and Harold Hebert, were called. Captain Richard was then recalled to testify. It was during his subsequent testimony that the defense counsel moved for the sequestration of the witnesses. Following the sequestration of the witnesses, Captain Richard completed his testimony, and was not recalled to testify thereafter.
The foregoing facts make it clear that there was no violation of the trial court's sequestration order. The witnesses were properly instructed and excluded from the courtroom following the defendant's motion to sequester. The defendant may not assert as error the presence of Captain Richard during the testimony of Berrian and Hebert, as the sequestration of witnesses had neither been ordered nor requested at that time. This assignment of error is therefore without merit.

*584 ASSIGNMENT OF ERROR NO. 2
In this assignment, the defendant asserts that the trial court erred in allowing the state to read the defendant's oral inculpatory statement to the jury. He claims that the statement was highly prejudicial because he was instructed to initial the statement after he expressed his desire to end the statement and to consult an attorney, and that the presence of his initials on the statement may have appeared to the jury to buttress the conclusion that the statement was free, voluntary and knowingly made. He argues that the jury was not informed that the presence of the initials actually signified the defendant's wish to end the statement. The defendant also contends that the introduction of the statement into evidence was reversible error because the statement was written down by Captain Richard and did not reflect the defendant's statement verbatim.
Whenever the state seeks to introduce into evidence an inculpatory statement, it has the burden of proving beyond a reasonable doubt that the statement was made freely and voluntarily, and not under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. LSA-R.S. 15:451; State v. Jackson, 414 So.2d 310 (La.1982). More specifically, the state must demonstrate that the accused was advised of his Miranda rights and that he knowingly and intelligently waived these rights. Moreover, if he indicates in any manner and at any stage in the process that he wishes to consult with an attorney, the interrogation must cease. State v. Carter, 412 So.2d 540 (La.1982). The admissibility of an inculpatory statement is in the first instance a question for the trial judge and his conclusions on the credibility and weight of the testimony relating to the voluntary nature of the statement will not be overturned unless they are not supported by the evidence. Jackson, supra at 312.
To be admissible, a confession need not be a verbatim record of the defendant's oral version. State v. Johnson, 327 So.2d 384 (La.1976). State v. Simmons, 328 So.2d 149 (La.1976), appeal after remand 340 So.2d 1357. In Johnson, the defendant gave an oral statement during which a detective took notes. These notes were then typed by a secretary, and the typed confession was presented to defendant for his signature. Though the defendant signed the confession, the officers were unsure whether he read it. In ruling on the defendant's objection to this procedure, the Court noted that the defendant was given ample opportunity to read it and object to any part he considered inaccurate and that the defendant, who made no allegation that he was illiterate or that coercion was used to obtain his signature, signed it.
In Simmons, the defendant was illiterate and by assignment complained of the manner in which the confession had been reduced to writing. In ruling on this question, the Court stated: "The objection goes merely to the weight to be given the evidence. Nor is the statement, if otherwise admissible, to be excluded because the interrogation of an illiterate accused is reduced to typewritten material by the interrogating officer." See also State v. Lefevre, 419 So.2d 862, 867 (La.1982).
In the instant case, the testimony of Captain Richard reflects that he read the defendant his Miranda rights twice and that the defendant read the form once, and informed the officers that he understood his rights. Based upon this testimony, the trial judge ruled that the inculpatory statement was voluntary and thus admissible into evidence. Therefore, the defendant's objection as to his statement being written down by Richard goes to the weight of the evidence rather than to its admissibility. Simmons, supra. It is noted that the defense attorney on cross-examination of Captain Richard amply demonstrated to the jury that the statement was written by Captain Richard and not by the defendant. This assertion of error lacks merit.
Similarly defendant's assertion that the statement should be held inadmissible because of the testimony relating to *585 his initials is also without merit. Defendant argues that the testimony reflecting his initials on the statement may have appeared to reflect to the jury that his statement was free, voluntary and knowingly made, rather than the actual fact that it only signified his desire to end the statement. As stated earlier, the admissibility of a confession is in the first instance a question for the trial judge and his conclusions on the credibility and weight of the testimony relating to the voluntary nature of the statement will not be overturned unless they are not supported by the evidence. Jackson, supra. In this case, the trial judge had already determined the voluntariness of the defendant's statement. While on the stand, Captain Richard read the statement, including the sentence "Stopped at this point and wanted a lawyer. R.J." There was no attempt made to interpret any portion of the defendant's statement, but rather, it was read and allowed to stand on its own merit before the jury. In his closing argument, the prosecuting attorney re-read the statement and illustrated some discrepancies between its contents and the testimonies presented by other witnesses. Despite defendant's allegation in his brief that "the State made quite a point (in his closing argument) that the defendant initialed the statement freely and voluntarily", the transcript does not support this claim. Furthermore, during the cross-examination of Captain Richard, the defendant did not attempt to clarify any confusion which he might have perceived to be within the minds of the jury concerning the defendant's initialling the statement. Inasmuch as the defendant has failed to show that he has suffered any prejudice from this alleged error, this assignment is without merit.

ASSIGNMENT OF ERROR NO. 3
By this assignment of error the defendant contends that the trial court erred in allowing Captain Richard to testify in the capacity of a fingerprint expert. More particularly, he alleges that the prosecuting attorney asked the witness several questions which called for an opinion, that the witness was not testifying as to facts within his personal knowledge, but rather as to his impressions or opinion, and that the testimony was elicited without a proper foundation being laid for such evidence.
The Supreme Court has consistently held that, with rare exception, a witness can testify only as to facts within his knowledge. He may not testify, unless properly qualified as an expert, as to any impression or opinion he may have. Nevertheless, as to subjects about which any person of experience might make an inference, a witness has not been prohibited from testifying as to natural inferences drawn from the facts he has personally observed. State v. Prestridge, 399 So.2d 564 (La.1981); State v. Haarala, 398 So.2d 1093 (La.1981).
During cross-examination of Captain Richard, defense counsel questioned him concerning the report by the crime lab which indicated no fingerprints were found on the alleged weapon used by the defendant. On redirect examination, the prosecuting attorney asked the defendant, "Does it surprise you that there are no fingerprints on that knife." The defense counsel objected stating, "I would object to this questioning. He's on direct examination." By this statement, it would appear that the basis for the defendant's objection was that the prosecutor was asking leading questions to his own witness. The basis for the objection was not that the question called for an opinion; thus, the defendant appears to be raising a new basis for this objection in his brief. A new basis for an objection cannot be raised for the first time on appeal. LSA-C.Cr.P. Art. 841; State v. Feeback, 414 So.2d 1229 (La.1982).
The next allegedly improper questioning arose when the prosecuting attorney asked the witness "What percentage of time do you find prints on a weapon?" The defendant objected to this question stating that it called for an expert opinion. The trial judge overruled the objection, allowing the witness to testify based upon his own knowledge of cases. This ruling appears *586 to be correct. The witness responded that in fourteen years, only three cases had been made with fingerprints. As this answer appears to have been from the witness's personal knowledge, it is not objectionable as opinion evidence.
The remaining two sets of questions which the defendant claims sought answers which were inadmissible opinion testimony are as follows:
"MR. CLINE:
Q. In fact, any piece of paper or any rag or cloth or anything would prevent fingerprints, wouldn't it?
A. Yes, sir.
Q. Any wiping would prevent fingerprints?
A. That's usually the case.
Q. And even without that, you don't have a guaranty if you don't have wiping and you don't have paper, you don't have anything to cover, you still don't have a guaranty that you are going to get a print do you?
A. That's correct, sir.
. . . . .
MR. CLINE:
Q. Why is it so dusty?
A. This is fingerprint dusting latent powder that was put on the telephone.
Q. Okay. Did you find any prints on it?
A. No prints.
Q. Does that surprise you?
A. Doesn't surprise me."
We entertain serious doubt as to whether the foregoing constitutes opinion testimony. It appears to us that the testimony merely contains facts within the knowledge of Captain Richard, gained through his years of experience in police work. In any event, the defendant offered no objection to either of these series of questions as is required by LSA-C.Cr.P. Art. 841. Fulfillment of this requirement allows the trial court the opportunity to rule on the objection and to avoid or cure any errors, and thus the failure of the defendant to object waives any alleged error. State v. Vanderhoff, 415 So.2d 190 (La.1982).
In light of the foregoing, this assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 4
In this assignment, the defendant contends that the trial court erred in considering past criminal charges and accusations of other crimes set out in the pre-sentence report when the sentence was rendered. This assignment is not meritorious.
The sources of information from which a sentencing court may draw are extensive, and traditional rules of evidence are not bars to consideration of otherwise relevant information. State v. Douglas, 389 So.2d 1263 (La.1980). Prior criminal activity is one of the factors under LSA-C.Cr.P. Art. 894.1 to be considered by the trial judge in sentencing a defendant. Prior criminal activity is not limited to convictions. State v. Brown, 410 So.2d 1043 (La.1982); State v. Washington, 414 So.2d 313 (La.1982). In Washington, the trial judge took into consideration the confession of defendant's co-conspirators as evidence of prior criminal activity. In State v. Williams, 412 So.2d 1327 (La.1982), the Supreme Court held that the trial judge did not err when he took into consideration the defendant's prior record of numerous arrests, even though he had never been prosecuted for those arrests and only had one prior conviction in 1967 for the crime of illegal carrying of weapons. Finding that the trial judge carefully articulated the basis for the sentence after considering appropriate factors, including the defendant's history of criminal activity, the court noted in its footnote:
"Both arrests and convictions may be considered in imposing sentence, as long as defendant, as here, is given notice of the derogatory information and is afforded a chance to speak in mitigation. In some cases it may be preferable to ascertain the factual basis for an arrest from such sources as police reports or presentence investigation reports. The sources of information upon which trial judges may draw in determining an appropriate sentence must be wide and varied, *587 and not subject to the normal restrictions imposed in the guilt determination phase of proceedings. See Williams v. New York, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949)." footnote 1, p. 1328.
In this case, the defendant was furnished with a copy of the presentence investigation report, reviewed it with his attorney, and was offered an opportunity to speak in his behalf before the trial judge sentenced him. Therefore, it appears that the defendant was given notice of any derogatory information and was offered a chance to speak in mitigation. Williams, supra. In light of this fact, this assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 5
By this assignment, the defendant contends that the trial court imposed an excessive sentence in violation of Art. 1, Sec. 20 of the Louisiana Constitution. The defendant was sentenced to serve seventy-five years at hard labor without benefit of probation, parole or suspension of sentence.
A sentence is excessive if the penalty is grossly disproportionate to the crime. State v. Pearson, 425 So.2d 704 (La.1982); State v. Goode, 380 So.2d 1361 (La.1980). In determining whether the penalty is grossly disproportionate to the offense, the appellate court must "consider the punishment and the crime in light of the harm to society caused by its commission and determine whether the penalty is so disproportionate to the crime committed as to shock our sense of justice." State v. Pearson, supra; State v. Bonanno, 384 So.2d 355 (La.1980); State v. Beavers, 382 So.2d 943 (La.1980). The trial judge has wide discretion in imposing sentences within statutory limits. Absent a manifest abuse of that discretion, the sentence imposed by the trial court will not be set aside as excessive. State v. Forshee, 395 So.2d 742 (La.1981); State v. Napoli, 428 So.2d 957 (La.App. 1st Cir.1983), writ granted on other grounds, 437 So.2d 868 (La.1983).
The pre-sentence investigation report made a part of the record shows that the defendant has a long history of serious criminal activity. Between 1977 and 1981, the defendant was arrested for and charged with numerous offenses, including two rapes, an armed robbery, two counts of simple burglary, possession of a deadly weapon, aggravated battery, possession of stolen property, attempted escape and possession of marijuana with intent to distribute. The report also reveals that the defendant stands charged with the aggravated rape of Ms. Monroe, which allegedly occurred during the armed robbery here under consideration.
In light of the defendant's history of criminal activity, and in particular his record of serious crimes against the person, we find no abuse of the trial court's discretion in the imposition of a seventy-five year sentence. This assignment lacks merit.
For the above and foregoing reasons, the defendant's conviction and sentence are affirmed.
AFFIRMED.
DOMENGEAUX, J., concurs. See concurring opinions in cases at State v. Goodman, 427 So.2d 529 (La.App.1983); State v. Vallare, 430 So.2d 1336 (La.App.1983); and State v. Shelby, 438 So.2d 1166 (La.App. 1983).
NOTES
[1] It is observed that the judge's request for the witnesses to leave the courtroom does not appear to be an invocation of the rule of sequestration. There is no notation in the minutes to show that the rule of sequestration was invoked. Furthermore, the record does not show that all the witnesses were present at that time, nor does it show that the witnesses were instructed concerning the rule of sequestration.