524 So.2d 1221 (1988)
STATE of Louisiana
v.
Corbie Lynn WILLIAMS.
No. CR87-467.
Court of Appeal of Louisiana, Third Circuit.
February 3, 1988.
*1223 Ted R. Broyles, Leesville, Daryl Gold, Shreveport, for defendant-appellant.
Don Burkett, Dist. Atty., ad hoc, Leesville, for plaintiff-appellee.
Before LABORDE and KNOLL, JJ., and CULPEPPER, J. Pro Tem.[*]
WILLIAM A. CULPEPPER, Judge Pro Tem.
On June 27, 1984 defendant, Corbie Lynn Williams, was charged by bill of information with three counts of distribution of a controlled dangerous substance (marijuana), a violation of LSA-R.S. 40:966(A)(1). On December 3, 1986 a jury of 12 returned a verdict of guilty as charged by a vote of *1224 ten to two. Defendant was sentenced to seven years at hard labor on each count, each sentence to run consecutively. In addition, the trial court imposed a $5,000 fine on each count, plus court costs. On default of payment, defendant was ordered to serve an additional one year on each count. On appeal, defendant sets forth 23 assignments of error. Ten of those assignments of error were not briefed and are considered abandoned. State v. Dewey, 408 So.2d 1255 (La.1982).

FACTS
Mr. Tony Mills, a former business partner of the defendant, became upset after being shortchanged by defendant in several drug transactions. Mr. Mills contacted the Vernon Parish Sheriff's Department which launched an investigation of defendant in conjunction with the Leesville City Police Department and the Louisiana State Police. The investigation covered the months of September and October 1983.
Mr. Mills was put in touch with Mark Harper, who functioned as an undercover agent in the investigation. On five separate occasions, September 2, September 20, October 4, October 12 and October 24, 1983, defendant sold approximately one-quarter pound of marijuana at prices ranging from $175 to $200. Mark Harper testified that some of the marijuana purchased was "homegrown" by defendant.
The State elected to charge defendant in two separate bills of information. The first trial concerned two counts of distribution of marijuana on October 12 and October 24, 1983. Defendant was acquitted of those charges. The instant trial concerned the three earlier sales on September 2, September 20 and October 4, 1983. The prosecution relied on the testimony of Mark Harper and Tony Mills to prove commission of the offenses. The defendant presented no witnesses and did not testify at trial.

ASSIGNMENT OF ERROR 1
By this assignment, defendant maintains that his second trial constituted double jeopardy. Before trial, the defendant filed a motion to quash based on double jeopardy which was denied. Defendant argues that by separating the five counts into two bills of information, he was tried twice for the same course of conduct in violation of the constitutional mandate against double jeopardy.
The Fifth Amendment to the United States Constitution and Art. I, § 15 of the Louisiana Constitution provide that no person shall be twice placed in jeopardy for the same offense. In State v. David, 468 So.2d 1133, 1135 (La.1985), the court stated:
"Inherent in the guarantee against double jeopardy are three constitutional protections: 1) against a second prosecution for the same offense after acquittal; 2) against a second prosecution for the same offense after conviction; 3) against multiple punishments for the same offense. North Carolina v. Pearce, 395 U.S. 711, 717 [89 S.Ct. 2072, 2076, 23 L.Ed.2d 656] (1969)."
Jeopardy began for the defendant when the first witness was sworn at the trial on the merits. LSA-C.Cr.P. art. 592.
LSA-C.Cr.P. art. 596 sets forth the requirements for double jeopardy:
"Double jeopardy exists in a second trial only when the charge in that trial is:
1) Identical with or a different grade of the same offense for which the defendant was in jeopardy in the first trial, whether or not a responsive verdict could have been rendered in the first trial as to the charge in the second trial; or
2) Based on a part of a continuous offense for which offense the defendant was in jeopardy in the first trial."
In addition to the statutory pronouncement, Louisiana uses two tests in determining whether a prosecution presents a double jeopardy problem. The first, the "distinct fact test," enunciated in Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), provides that when the same conduct constitutes a violation of two distinct statutory provisions the test to be applied is whether each provision requires proof of an additional fact that the *1225 other does not. See State v. Holmes, 475 So.2d 1057 (La.1985).
The "same evidence" test used in Louisiana is somewhat broader in concept than Blockburger, the governing test being that one should not be punished (or put in jeopardy) twice for the same course of conduct. State v. Steele, 387 So.2d 1175 (La.1980). The same evidence test holds that two offenses are the same for double jeopardy purposes if the same evidence is required for the conviction of each offense. If one offense requires proof of additional facts which the other does not, the accused may be tried and convicted on both offenses unless the gravamen of the second offense is essentially included within the offense for which first tried, in which case the second prosecution is barred because of double jeopardy. State v. Solomon, 379 So.2d 1078 (La.1980); State v. Cotten, 438 So.2d 1156 (La.App. 1st Cir.1983), writ denied, 444 So.2d 606 (La.1984). The "same evidence" test depends on the evidence necessary for conviction, not all the evidence introduced at trial. State v. Steele.
Defendant's contention is that the State sought to take "two bites out of the apple," by charging defendant in two separate bills of information. The offense charged was the same in all of the counts, violations of LSA-R.S. 40:966(A)(1), distribution of a controlled substance, marijuana. Double jeopardy embodies the constitutional protection against multiple punishment and multiple convictions for a single criminal wrong. State v. Cotten. However, neither test is satisfied in defendant's case.
Each time defendant sold marijuana to the undercover agent, he violated LSA-R.S. 40:966(A)(1). The mandate against double jeopardy does not seek to protect criminals who engage in the same type of criminal conduct over a long period of time. The State, within its discretion, could have charged defendant in five separate bills of information for the five counts of distribution of marijuana and tried him in five separate trials without violating the defendant's constitutional rights. This is not a case in which the State, after failing to convict defendant of one offense, sought to convict defendant for another offense based on the same course of conduct. Each sale constituted a separate course of conduct and a separate crime for which defendant could be charged and tried. See State v. Buckley, 344 So.2d 980 (La.1977) and State v. Reed, 499 So.2d 132 (La.App. 3d Cir.1986).
This assignment is without merit.

ASSIGNMENT OF ERROR 2
Defendant maintains that the false statement of a juror on voir dire constitutes reversible error. Vera Sue Goodwin was asked by both the district attorney and defense counsel during voir dire if she had any friends or family in law enforcement. In response to each inquiry, Ms. Goodwin replied "No." Therefore, she was accepted by both sides and sworn in to the jury. Since the trial, defendant has obtained an affidavit from the chief of police of New Llano, Louisiana, stating that Ms. Goodwin's father has been a police officer in New Llano since May of 1983.
Defendant argues that because Ms. Goodwin testified falsely on voir dire, he was deprived of the opportunity to request a challenge for cause and, if that was denied, to exercise one of his peremptory challenges. Since defendant could not ascertain Ms. Goodwin's true relationship with a law enforcement official, he was denied any opportunity to remove her from the jury. Ms. Goodwin was one of the ten jurors voting guilty. It should be noted that defendant does not reveal when he learned of the false statements made by Ms. Goodwin, but the affidavit is dated April 2, 1987, several months after trial.
Defendant asserts that the perjured testimony of Ms. Goodwin constitutes reversible error under LSA-C.Cr.P. art. 775(6) which provides:
"A mistrial may be ordered, and in a jury case the jury dismissed, when:
* * * * * *
"(6) False statements of a juror on voir dire prevent a fair trial."
Article 775 sets forth permissive grounds upon which the trial judge may grant a *1226 mistrial. However, the decision to grant or deny a motion for mistrial rests within the trial court's discretion. Article 775(6) requires a showing by the defendant that the defendant was denied a fair trial as a result of the juror's false statement. It does not constitute mandatory grounds for a mistrial.
The information concerning Ms. Goodwin might have served as the basis for a motion for new trial. However, in that instance the defendant must have shown that he was unable to discover the prejudicial error or defect in the proceeding prior to verdict or judgment, notwithstanding the exercise of due diligence, and that some injustice had been done to the defendant. LSA-C. Cr.P. art. 851. The defendant did not move for a new trial and has failed to show on appeal that he was unable to discover the information, notwithstanding the exercise of due diligence, and that any injustice resulted.
A juror's association with law enforcement personnel will not alone disqualify him from service on a criminal jury; however, such associations should be closely scrutinized. The association must be such that it would affect the juror's impartiality or influence the juror in arriving at a verdict. State v. Jones, 474 So.2d 919 (La. 1985) and State v. Madison, 345 So.2d 485 (La.1977).
Based upon our review of the record of the voir dire of Ms. Goodwin, there is nothing to indicate, that had the fact of her father's employment been known, the trial court would have granted a challenge for cause on that basis alone. LSA-C.Cr.P. art. 797. There is no basis for this court to reverse on the highly speculative argument of the defendant that he would have exercised a peremptory challenge had Ms. Goodwin answered truthfully. Since we have nothing more before us to review, we conclude that any relief, if available, must be sought in the trial court.
This assignment lacks merit.

ASSIGNMENTS OF ERROR 3 and 4
By these assignments, defendant claims that the trial judge erred in restricting defendant's questioning on voir dire. Specifically, defendant wished to question prospective jurors about their feelings about his prior acquittal in the earlier trial. Also defendant felt the trial judge erred in not allowing him to question one prospective juror, Ms. Goodwin, relative to her attitude as to the integrity of law enforcement.
La.C.Cr.P. art. 786 provides:
"The court, the state, and the defendant shall have the right to examine prospective jurors. The scope of the examination shall be within the discretion of the court. A prospective juror, before being examined, shall be sworn to answer truthfully questions asked him relative to his qualifications to serve as a juror in the case."
The court in State v. Perry, 420 So.2d 139, 144 (La.1982), stated the purpose of voir dire examination:
"We have recognized that the purpose of voir dire examination is to determine qualifications of prospective jurors by testing their competency and impartiality. It is designed to discover bases for challenges for cause and to secure information for an intelligent exercise of peremptory challenges. The scope of voir dire examination is within the sound discretion of the trial judge and his rulings will not be disturbed on appeal in the absence of a clear abuse of discretion." [Citations omitted]
Therefore it is clear that the defendant has wide latitude to conduct voir dire examinations. However, the trial judge has discretion in determining the scope of the examination under the prevailing facts and circumstances. State v. Vinet, 352 So.2d 684 (La.1977). When a question arises concerning whether voir dire examination has been unduly. restricted, the disallowance of a proper question is not automatically reversible. In evaluating the fairness of the ruling the entire examination must be considered. Id. at 687.
With respect to the questions concerning the prior acquittal of defendant, the trial judge refused to allow defendant to question prospective jurors about their knowledge *1227 of the verdict in the prior trial. However, the trial judge did allow defendant to ask about their knowledge of the prior trial. The voir dire was only restricted with respect to the verdict rendered in the prior trial. The trial judge allowed defense counsel to ask whatever questions were necessary to find out if the prospective jurors were prejudiced against the defendant, subject to that one restriction.
Defendant complains that the trial judge erred in not allowing him to question Ms. Goodwin, a prospective juror about her attitude toward the integrity of law enforcement officers. The following exchange occurred between the defense counsel and the juror:
"Q. Now, Mr. Burkett talked with you a little bit about drugs in general, and of course, it's a waste of time to ask anybody if they're opposed to drugs. We're all, as good human beings who think sensibly, supposed to be opposed to drugs, and should be. But, Mr. Burkett has explored your attitude about whether or not you think it should be a crime for a person to sell drugs to an undercover narcotics agent, and you've indicated it ...
A. Yes sir.
Q.... you think it should, right? At the same time, do you think it's possible that sometimes over zealous, over active State Police Narcotics Agents, people who take off the uniform and hide their badge and grow a beard, do you think it's possible that sometimes they make cases without having evidence?
A. I don' know.
Q. Do you think it's possible sometimes that they want to arrest somebody they think's a bad person bad enough that they would take some marijuana they got some place else and say they got it from him, for example, in order to make a case when one didn't exist?
BY MR. BURKETT:
Your Honor, excuse me, I'm going to object to that.
BY THE COURT:
I'm going to sustain that objection. You can make the final argument or the opening statement later, Counsel."
The following took place during a bench conference on the objection:
"BY THE COURT:
Before you say what you have to say, I'm getting weary about this repetition on the presumption of innocence and that sort of thing. There's been no objection and I'll grant you wide latitude, but I'm tired of this repetition, though. All right, go ahead and say what you want to say.
BY MR. TILLMAN:
Your Honor, I understand the Court's already ruled, and I do not intend to offend the Court's ruling, but if they're going to be allowed to ask whether or notthe juror's attitude about drug sales, then I don't know why I can't be allowed to ask whether or not their attitude about whether or not the integrity of the police which is an issue in this case. We're talking about general attitudes.
BY THE COURT:
You can ask them if they are related or if they think that a witness for the State of an officer of the lawif they'd give more credence to his testimony than somebody elses, but this business of giving a scenario, that you have no evidence on or anything like that at this time, that would normally come up in a closing argument. Or perhaps even in opening statement, where you tell the jurors to listen for this or listen for that and so forth, and then in closing argument, well, you heard this and you heard that, but you'reI don't want toI'm not going to permit you to make closing argument here in the voir dire."
We find no abuse of discretion on the part of the trial court with respect to its limitation of the defendant's questioning of prospective jurors on voir dire. Our review of the voir dire examination in its entirety reveals that defendant's questions generally attempted to elicit from the jurors in advance their opinions concerning the *1228 weight of evidence to be offered at trial and the guilt or innocence of the defendant based upon the previous trial and verdict of acquittal. See State v. Square, 257 La. 743, 244 So.2d 200 (1971).
These assignments lack merit.

ASSIGNMENT OF ERROR 5
Defendant asserts that the trial court erred in denying his challenge for cause, relative to prospective juror, JoAnn Pollard. The voir dire examination revealed that Mrs. Pollard's husband had been a Vernon Parish deputy and from time to time discussed cases with her. However, she did not remember having discussed the defendant with her husband. She stated that despite any conversations she may have had with her husband, she could be a fair and impartial juror and could judge the case strictly on the evidence presented. Defendant's challenge for cause was refused and he exercised a peremptory challenge. Subsequently, defendant exhausted all of his peremptory challenges.
LSA-C.Cr.P. art. 797(3) provides:
"The state or the defendant may challenge a juror for cause on the ground that:
* * * * * *
(3) The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict;"
* * * * * *
Defendant need show only two things to obtain reversible error: (1) that the trial judge erred in refusing to sustain a challenge for cause by the defendant and (2) that he exhausted all of his peremptory challenges. State v. Smith, 466 So.2d 1343 (La.App. 3d Cir.1985).
Implicit in the right to jury trial is the guarantee that an accused will receive an impartial jury. State v. Freeze, 438 So.2d 1340 (La.App. 3d Cir.1983), writ denied, 466 So.2d 465 (La.1985). The constitutional standard of fairness requires that a defendant have a panel of impartial, indifferent jurors. Id.
Mrs. Pollard testified during voir dire that her husband had been a Vernon Parish deputy. However, it is well settled that mere relationship of a prospective juror to a law enforcement officer is not of itself grounds for cause. State v. Smith, 430 So.2d 31 (La.1983). The question is whether the juror can assess the credibility of each witness independent of his relationship to law enforcement. This determination is within the great discretion of the trial judge and will not be overturned absent an abuse of that discretion. Id.
In addition to showing that a relationship exists between a prospective juror and a law enforcement official, defendant must also show that the relationship would influence the juror in arriving at a verdict. LSA-C.Cr.P. art. 797(3); State v. Chapman, 410 So.2d 689 (La.1981). If a juror reveals details of his relationship with a law enforcement official such that bias or prejudice may be reasonably implied, the juror may be properly refused for cause. State v. Lewis, 391 So.2d 1156 (La.1980). However, if the trial court could reasonably conclude, from the juror's answers on voir dire examination, that he could render an impartial verdict according to the law and evidence, the trial court may deny the challenge for cause. State v. Freeze.
The defendant relies heavily upon State v. Sylvester, 400 So.2d 640 (La.1981), a case which is easily distinguishable. In State v. Sylvester the prospective juror had worked for the police department for a number of years, recently retired at a high rank and was the former employer of the State's principal witness. The court ruled that the trial judge erred in not sustaining a challenge for cause based on these facts.
State v. Sylvester does not lend support to defendant's contention that the trial court erred in denying the challenge for cause. Mrs. Pollard was not involved with law enforcement duties as the potential juror was in State v. Sylvester, she is merely married to a former deputy. That *1229 relationship alone will not support a challenge for cause unless it is also shown that the relationship would influence the juror in arriving at a verdict. Although Mrs. Pollard admitted to discussing cases with her husband, she had not discussed this case or this defendant with her husband. Furthermore, she stated that she did not know the defendant and that she would be able to serve as a fair and impartial juror notwithstanding her husband's former occupation and her past discussions with him.
The trial judge is vested with broad discretion in ruling on a challenge for cause, and his ruling will not be disturbed on appeal unless the record demonstrates a manifest abuse of discretion. State v. Freeze. The trial judge concluded from the responses Mrs. Pollard gave during voir dire examination that she could serve as a fair and impartial juror. Based upon the entire voir dire examination of Mrs. Pollard, the trial judge's conclusion was reasonable and not an abuse of his discretion.
This assignment of error lacks merit.

ASSIGNMENT OF ERROR 6
Defendant contends that the trial judge erred by commenting on the evidence in the presence of the jury. During the cross-examination of Mark Harper, the undercover agent, the trial judge interrupted defense counsel and the following exchange took place:
"BY THE COURT:
I don't hear any objection from the other Counsel but he should be objecting, because this is clearly repetitious, you see, Counsel.
BY MR. TILLMAN:
I understand. Your Honor, but Counsel is not objecting.
BY MR. BURKETT:
Your Honor, II (inaudible).
BY THE COURT:
I don't know why you don't object to that, Counsel.
BY MR. BURKETT:
Excuse me just a moment. I would object, but the State has nothing to hide. We've laid our case out.
BY THE COURT:
Well, II don't want any argument. I'm just saying that this is repetitious and I'm going to have to start stepping in here myself if you don't. Go ahead.
BY MR. TILLMAN:
Your Honor, as I understood, there was no objection, and I'd like to continue the questioning.
BY THE COURT:
That's correct, but it's the prerogative and duty of this Court to move this thing on."
Defendant argues that these remarks amounted to an improper comment on the evidence since the trial judge interrupted the defense counsel's questioning of a witness. Defendant did not make an objection to the trial court curtailing the line of questioning. Therefore this assignment of error is not properly before us on appeal. LSA-C.Cr.P. arts. 841, 920.
However, we observe that the trial judge's comments in this case fall within the province of LSA-R.S. 15:275 which states:
"In the discipline of his court, the trial judge is vested with a sound discretion to stop the prolonged, unnecessary and irrelevant examination of a witness, whether such examination be direct or cross, even though no objection be urged by counsel."
The trial judge's remarks were merely an exercise of his discretion to put an end to the repetitious questioning of the witness. State v. Williams, 386 So.2d 1342 (La. 1980).

ASSIGNMENT OF ERROR 7
Defendant maintains that the trial court erred in refusing to allow Mark Harper, the undercover agent involved in both prosecutions of defendant, to answer questions concerning his testimony in the prior trial. Also defendant claims the trial court erred in refusing to admit into evidence the entire testimony of the first trial in which defendant was acquitted. Defendant maintains that since the charges and the evidence against him in the first trial were the same as those in the second, that the first *1230 trial's entire transcript should have been admitted under LSA-R.S. 15:459 and 15:441.
Defendant asserts the evidence was admissible pursuant to LSA-R.S. 15:459 and LSA-R.S. 15:441. LSA-R.S. 15:459 reads as follows:
"Whenever, during the trial of any criminal case, either party may desire to offer in evidence any record, paper or document belonging to the files or records of the court in which the trial is proceeding, the presiding judge shall, at the request of such party, direct the clerk to produce such record, document or paper, in order that the same may be used in evidence; and it shall not be necessary for the clerk in any such case to make a copy of such record, document or paper."
LSA-R.S. 15:441 reads as follows:
"Relevant evidence is that tending to show the commission of the offense and the intent, or tending to negative the commission of the offense and the intent...."
The defendant sought to offer the verdict of the prior trial in order to show that he was acquitted of the same charges in a prior trial in which the State used the same evidence. The State objected on the grounds of relevancy. The trial judge consistently refused to allow defense counsel to refer to the prior verdict each time he attempted references to it during the trial and on voir dire.
The defendant's argument is essentially the same as his assignment concerning double jeopardy. As discussed previously in defendant's first assignment of error, the defendant committed several violations of the same criminal statute, each involving the same type of controlled dangerous substance, but each act is a separate and distinct crime. The only purpose for admitting the evidence of the prior verdict of acquittal would be to show that the defendant did not commit the crimes. Therefore this would constitute evidence of his good character. LSA-R.S. 15:579 and 15:480. We do not find that the trial court committed error in ruling that the evidence was inadmissible. The State cannot use prior criminal acts to prove an accused's bad or criminal character, and good character cannot be shown by documentary or testimonial evidence that an accused has never been in trouble. The defendant's good character can only be established by proof of his general reputation in the community in which he lives. State v. Oliver, 247 La. 729, 174 So.2d 509 (1965), cert. denied, 382 U.S. 862, 86 S.Ct. 124, 15 L.Ed.2d 100 (1966). This was improper character evidence.
This assignment lacks merit.

ASSIGNMENT OF ERROR 8
By this assignment, defendant asserts that the trial judge erred in not allowing defense counsel to learn the whereabouts of the wife of witness Tony Mills so that defense counsel could have her subpoenaed. Defendant contends that Mrs. Mills' testimony would have contradicted that of her husband, and that she would have been a material witness for the defense.
Defendant alleges that the prosecution led him to believe the State would be unable to subpoena Tony Mills, only to fly Tony Mills in to testify for the trial. The Mills are living some 700 miles from Leesville, but the prosecution refused to disclose their whereabouts due to threats made by the defendant against Mr. and Mrs. Mills. Defendant alleges the trial court erred by depriving him of the right to subpoena a material witness to his defense.
Tony Mills stated in his testimony that his wife was out of state at the time of the trial. A defendant is entitled to summon, at state expense, the attendance of witnesses from outside the state, provided he makes a prior showing that the testimony is relevant and material. State v. Hogan, 372 So.2d 1211 (La.1979). This right to compulsory process is predicated on the exercise of due diligence by the defendant. State v. Clark, 437 So.2d 879, (La.App. 2d Cir.1983), writ denied, 442 So.2d 460 (La. 1983).
Defendant did not subpoena this witness until after trial began and then no specific *1231 relief was sought except to request the issuance of a subpoena.
More importantly, the defendant must show that testimony is material and relevant before he can summon witnesses from outside the State. State v. Hogan. "The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." State v. Rosiere, 488 So.2d 965, 970 (La. 1986). "A `reasonable probability' is a probability sufficient to undermine confidence in the outcome."U.S. v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).
In this case, defendant made no showing that the testimony of Mrs. Mills would be material. Defendant alleged that Mrs. Mills might have been able to impeach the credibility of her husband as a result of prior inconsistent statements. Mrs. Mills' testimony was not alleged to be exculpatory. Defendant did not make a showing that Mrs. Mills' testimony would be material, nor did he exercise due diligence in obtaining her appearance.
This assignment is without merit.

ASSIGNMENTS OF ERROR 9 and 10
These assignments relate to comments made by the district attorney during his closing argument. The defendant contends the district attorney committed reversible error when he commented about the defendant's failure to testify and his failure to put his sons on the stand. Defendant argues the following comments constitute reversible error:
"Nobody has put on any evidence to say they wasn't there. You didn't see any Williams kids say, `I never saw those people at home when I wasat my house when I was there.' This son that brought the baggie out. He didn't get up here and deny it."
Defendant also complains about the following:
"... should do. It's just not done. This case is proven beyond a reasonable doubt. There's no doubt it's been proven beyond a reasonable doubt. The evidence is not controverted. Nobody disputes what we've said about going out there. They try to pick it apart, but nobody disputes it. Corbie Lynn Williams's sons didn't tell you that he didn't bring any dope out there and give it to anybody. He could have. He didn't testify that they didn't come out there while I was there, I never saw anything happen. And you remember, he was a big part of it and he didn't get on the stand and tell you that. He could have."
It is fundamentally unfair to allow the accused's silence to impeach him at trial. Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976); State v. Sam, 412 So.2d 1082 (La.1982). LSA-C.Cr.P. 770(3) provides that a mistrial shall be granted when the district attorney remarks upon the failure of the defendant to testify in his own defense.
The prosecutor's remarks in this case seemed to encompass the whole case and not just highlight the failure of defendant to testify. Each passage which the defendant alleges to be prejudicial refers to the defendant's failure to put on witnesses not his failure to take the stand. The court in State v. Jackson, 454 So.2d 116, 118 (La.1984), stated:
"A statement that the state's evidence is uncontradicted is not necessarily a prohibited comment on defendant's failure to testify. However, when defendant is the only person who can dispute the state's evidence, a reference to testimony as uncontroverted constitutes reversible error. Similarly, a reference to something `only the defendant knows' is a prohibited reference to defendant's failure to testify. However, when there are other possible witnesses, an argument that the state's case is unrebutted does not focus the jury's attention on defendant's failure to testify." (Citations omitted)
In order to raise this issue on appeal, the defense must have made a timely objection during the trial. At no point during the prosecutor's closing argument did the defense object to the alleged prejudicial remarks. *1232 Generally, the defense cannot avail itself of an error which was not objected to at the time of its occurrence. LSA-C.Cr.P. arts. 841, 920.
This assignment is without merit.

ASSIGNMENT OF ERROR 11
Defendant asserts that the district attorney's closing argument constituted an appeal to prejudice and the trial judge erred in overruling the defense counsel's motion for mistrial. The district attorney's rebuttal argument, in pertinent part, was as follows:
Mr. Tillman tells you, you know, the State's short. Think about it. It could be you. It could be your wife. Your son. Your spouse next time. It sure could. They may be the one that would end up with some of this dope that came from Corbie Lynn Williams. I want you to think about that. There's a time for all good things to end and this is the time for Corbie Lynn Williams. Are you going to walk out of here and allow him to make a mockery of your Court system in Vernon Parish? A laughing stock of Vernon Parish period? Are you going to let that happen? Are you tired of it? Are you fed up with it? Are you going to tell him, "Corbie Lynn, enough is enough, your day has come. It's time for you to face the music." Now, I'm not going to get into all this little evidence again and this, that and the other. You know what the case is about. You know what you saw. And reasonable people, based on this evidence, shouldn't have any reasonable doubt. Mark Harper hadn't planted anything on anybody. Herb Cross didn't help him do it. Tony Mills might not be the best person in the world, but he did the right thing for once in his life. Corbie Lynn's caught.
He knows he's caught. His guilt's been proven, not beyond a reasonable doubt but to an absolute certainty. There's no logical reason you can give why you think he didn't sell the dope on not one, not two, but on three occasions to the State Police. I urge you to consider it. Think about your duties. Think about your obligations as citizens to this Parish.
BY THE COURT: You need to summarize, Counsel.
Give it a lot of thought. I have faith in people and I have faith in the people of Vernon Parish. I'm a close neighbor of yours and I care about what happens to you. I wouldn't be down here if I didn't. I've got lots to do in my district. But I hope you care enough. I hear people say all the time, `Why don't ya'll do something.' `Why don't ya'll' (interruption inaudible)
BY MR. TILLMAN:
Your Honor, I'm going to object. It's been proven over and over than an appeal to prejudice is an improper argument and I'm going to object and move for a mistrial.
The above quoted passage was made in response to the following arguments made by defense counsel during his closing statement:
... `You don't have to labor and say, "I found him not guilty." Mr. Burkett would have you pressured to say, "You're going to have to come back out and face society and say you found him not guilty." Well, first of all, you are society. You don't have to face anybody or explain your decision to anybody. But secondly, you don't have to find him not guilty. He is not guilty. He has been not guilty since the beginning of this proceeding and he's going to remain not guilty unless the twelve of you in that room decide the State has proven its case beyond a reasonable doubt, and you don't have to explain or be embarrassed oror justify that to anybody, anywhere along the line. You can convict this man on this evidence if you see fit to do so. If you see fit to believe completely Mark Harper. If you see completely proper to disregard all the discrepencies, all the evidence problems, then you can convict this man. The State's asking you to do it. The State's asking you to convict. You know, the danger of that is that one of these days the person seated over there next to the lawyer may be you or *1233 your husband or wife, or your child. And the danger of that is that is that that evidence that might go either way might be used against them. That's what's so holy, that's what's so proper and that's what's so sacramental about the function that you're going to receive and take on today, is that the jury is the protection of every citizen against cases where the evidence is not right, cases where the witnesses didn't testify properly, and cases that don't exist except in the mind of the investigating officers. I appreciate your time and attention and I've already told you probably too much.'
The appropriate response to defense counsel's argument would have been a prosecutorial objection. However, the prosecutor chose to refute defendant's warning, that members of the jury or other families may someday find themselves in the defendant's chair, by warning that members of the jury may find members of their family with some of defendant's drugs.
LSA-C.Cr.P. art. 774 governs the scope of closing arguments by the State and the defense. LSA-C.Cr.P. art. 774 reads as follows:
"The argument shall be confined to the evidence admitted, to the lack of evidence, the conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case. The argument shall not appeal to prejudice. The state's rebuttal shall be confined to answering the argument of the defendant."
Article 774 does not provide a sanction against one who goes beyond the permissible scope of argument. State v. Craddock, 435 So.2d 1110 (La.App. 1st Cir.1983). If argument goes beyond the scope of Article 774, the court may grant a mistrial or an admonishment, premised upon argument by opposing party which is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant in the mind of the jury. The trial judge, however, has wide discretion in controlling the scope of argument. Id.
A prosecutor's predictions as to the consequences of a not guilty verdict, or the societal costs of such a result, are clearly improper and should be avoided. State v. Barrow, 410 So.2d 1070 (La.1982), cert. denied, 459 U.S. 852, 103 S.Ct. 115, 74 L.Ed. 2d 101. Accordingly, a prosecutor should refrain from argument which tends to divert the jury from its duty to decide the case on the evidence by injecting issues broader than the guilt or innocence of the accused. State v. Guillory, 461 So.2d 492 (La.App. 3d Cir.1984). Occasionally, prosecutors have been given some latitude to use argument outside the scope of Article 774 to refute defense's argument of a like character. State v. Morris, 404 So.2d 1186 (La.1981). We find this to be the case herein and find no abuse of discretion on the part of the trial court in refusing to grant a mistrial.
Defendant's next argument focuses on the remarks made at the end of the prosecution's closing statement, where the prosecutor states "I wouldn't be down here if I didn't [care]." Defendant relies on State v. Kaufman, 304 So.2d 300 (La. 1974), cert. denied, 429 U.S. 981, 97 S.Ct. 495, 50 L.Ed.2d 591 (1976), in which the court held that a prosecutor's expression of his personal belief in the defendant's guilt constituted reversible error. In Kaufman the prejudicial remark came during closing argument. The prosecutor stated:
"Gentlemen, my argument, when I speak in a personal way, my argument is based on the evidence, and believe me, that's right, I personally feel from the evidence that I have a case; otherwise, I wouldn't be here, because it's within my power to be here or not be here." Id. at 307.
The remarks of the prosecutor in the instant case are not nearly as blatant as those in State v. Kaufman. Read in context, the jury could have made the inference that the prosecutor was explaining the reason why the district attorney from Sabine Parish was prosecuting the defendant in Vernon Parish rather than leaving a mere inference that the defendant is guilty or I would not have come this far to prosecute.
*1234 Nevertheless, if the comments of the district attorney constituted impermissible argument under Article 774 to amount to reversible error, the court must be firmly convinced that the jury was influenced by the remarks and that they contributed to the verdict. State v. Guillory. The State presented during trial the two witnesses who testified that they bought the marijuana from defendant on three separate occasions, the marijuana purchased from the defendant, and other corroborating witnesses. There was enough evidence of defendant's guilt so that one would not be firmly convinced that the remarks contributed to the verdict.
Accordingly, this assignment of error lacks merit.

ASSIGNMENT OF ERROR 12
Defendant contends the sentence imposed was excessive. Defendant was convicted on an indictment of distribution of marijuana. LSA-R.S. 40:966(B)(2) provides a maximum penalty of ten years at hard labor for each count and a fine up to $15,000. Defendant was given a presentence hearing and thereafter was sentenced to seven years at hard labor on each count, to run consecutively, three fines of $5,000 with an additional year on each count if the fines were not paid.
Defendant alleges that the trial judge did not comply with Article 894.1 when imposing the sentence, in that the trial judge considered juvenile arrests and charges that had been dismissed. Also defendant argues that the record does not reflect that the trial judge considered any mitigating factors. Defendant urged in mitigation the fact that he had only one previous felony conviction, no prior drug convictions, and the fact that defendant has five children that are dependent upon him for support.
Prior to sentencing, the court held a hearing on defendant's application for bail, at which time a great deal of information concerning defendant's personal, work, family and criminal history were elicited. Additionally, the court received a presentence investigation report and conducted a presentence hearing. It was the court's opinion, based upon the evidence adduced at trial, that the defendant intended to continue drug trafficking and in even larger quantities. In considering the defendant's criminal record, the trial judge noted the defendant's extensive juvenile record and the fact that defendant has been arrested at least 40 times on charges ranging from disturbing the peace to conspiracy to commit murder since reaching the age of majority. The defendant was convicted of at least ten of those charges, one being a felony conviction for which the defendant received a suspended sentence and supervised probation. The trial judge went on, at length, to discuss the seriousness of the instant crime committed by defendant and that defendant would not be entitled to a suspended sentence. The trial judge did not believe that, based on the defendant's history, he would refrain from future criminal conduct and imposed the sentence complained of.
Defendant argues that the trial court improperly considered defendant's arrests, charges that had been dismissed, and his juvenile record in imposing a sentence. This argument lacks merit. The trial court is not limited to consideration of convictions only in imposing a sentence. Prior criminal activity is one of the factors to be considered by the trial court under LSA-C. Cr.P. 894.1. See State v. Cruz, 438 So.2d 1251 (La.App. 3d Cir. 1983). The weight accorded this information lies in the discretion of the trial court. C.Cr.P. art. 894.1. The trial court committed no error in this respect.
Defendant next argues that the record is completely devoid of any mitigating factors taken into account by the trial court in imposing sentence. The mitigating factors which defendant asked the court to consider were that he had only one prior felony conviction and that he had five children who were dependent on him. It is clear from the record of the presentencing and sentencing hearings that the trial court considered several of the mitigating factors under LSA-C.Cr.P. art. 894.1 B in reaching its sentence. While the trial court did not specifically state that it had considered the *1235 defendant's marital status and dependent children, it did adequately comply with Article 894.1. The trial court need not articulate every aggravating and mitigating circumstance, so long as the record reflects that he adequately considered these guidelines in particularizing the sentence to defendant. State v. Cox, 474 So.2d 1040 (La. App. 3d Cir.1985). The record reflects the fact that the defendant has five dependents; this is the only mitigating factor present.
The record of the bail application hearing indicates that defendant has had a sporadic work history and continuous trouble with the law, including recent charges filed against him by one of his sons and a brother for violent behavior directed toward them. The possibility of job loss and financial difficulties is confronted by virtually any individual who may be facing a jail sentence. State v. Shelby, 438 So.2d 1166 (La.App. 3d Cir.1983). In this case the trial court did not have the option to suspend the defendant's sentence because of his previous felony conviction. There do not seem to be any unusual or extenuating circumstances which would warrant mitigation of the defendant's sentence.
Nonetheless, a sentence may be unconstitutionally excessive if the penalty is grossly disproportionate to the crime. On review the court must consider the punishment and the crime in light of the harm to society caused by its commission and determine whether the penalty is so disproportionate to the crime committed that it shocks the court's sense of justice. State v. James, 447 So.2d 580 (La.App. 3d Cir. 1984). The trial court has wide discretion in imposing sentences within statutory limits and absent a manifest abuse of that discretion, the sentence will not be set aside. Id.
The maximum term of imprisonment which the defendant was exposed to was 30 years at hard labor. The maximum fine which could be imposed was $45,000. The aggregate of the defendant's sentences is 21 years at hard labor, plus the possibility of an additional three years in default of payment of the fine. The fines imposed totaled $15,000. The sentence imposed is within statutory limits, albeit in the upper range. However, the defendant was convicted of selling marijuana on three separate occasions to an undercover police officer in quantities of approximately one-quarter pound for sums between $175 and $200. The defendant also grew his own marijuana at his home, and promised much larger quantities to the officer in a future deal for approximately $25,000. The officer and the State's principal witness both testified that at least one of the defendant's minor children was present during their dealings and was instructed to retrieve the marijuana for the buyers. This child brought and handed the marijuana to the buyers. In light of all of the facts and circumstances surrounding these crimes and the history of this particular defendant, we do not find that the trial court abused its discretion in imposing sentence.
We find no merit in this assignment.

CONCLUSION
Accordingly, the defendant's conviction and sentence are hereby affirmed.
AFFIRMED.
NOTES
[*] Honorable William A. Culpepper, Judge, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.